Stevenson et al. v. Polk et al.

## STEVENSON ET AL. V. POLK ET AL.

1. **Title Bond:** FORECLOSURE: TENDER OF DEED. No tender of a deed is necessary by the vendor of real estate in order to the maintenance of an action in equity to foreclose a title bond for the collection of the purchase money. In an action at law for the purchase money a different rule prevails. (See opinion for authorities cited.)

2. **Contract:** SIGNING AS TRUSTEE: PAROL TO DISCLOSE CAPACITY: WHO LIABLE. Where one signs a contract as trustee, and there is nothing on the face of the contract to indicate for whom he is trustee, parol evidence is not admissible to show such fact, and he is personally liable. (See cases cited in opinion.)

3. **Vendor and Vendee:** ACTION FOR PURCHASE MONEY: DEFENSE OF DEFECTIVE TITLE: BURDEN OF PROOF. Plaintiffs' intestate sold land to defendant, and gave him a bond for a deed, and put him in possession, and his right of possession had not been questioned. He also furnished him an abstract of title to the land. In an action for the purchase money and to foreclose the title bond, defendants pleaded, not that there was no title to any portion of the land, but, in general, that the title was defective, as shown by the abstract. Plaintiffs on the trial did not trace their title back to the government, by introducing in evidence deeds from their grantors, but simply showed that the land had been conveyed to the intestate, and that he had been in open, notorious and undisturbed possession for more than ten years. *Held* that this was presumptive evidence of title, and that the burden was on defendants to show wherein the title, as shown by the abstract, was defective.

4. ———: ———: ———: REMOVAL OF INCUMBRANCE. In such case, a recovery cannot be defeated on the ground that a portion of the land is encumbered, if the incumbrance is removed prior to the trial; unless there has been a rescission, or such an offer to rescind as entitled the party making it to a rescission at the time the offer was made.

5. ———: ———: ———: MORTGAGE TO CORPORATION: RELEASE. In such case it is sufficient for the plaintiff to prove that a mortgage on the premises has been paid, without proving a release of record; but where the mortgage was to a corporation, and it was satisfied of record by the secretary and treasurer of the company, *held* that this was a sufficient release, though not executed in the manner required by the articles of poration for instruments affecting the title to real estate.

6. ———: ———: ———: MERE POSSIBILITY OF LITIGATION. In such case, a mere possibility that there may be litigation over the title will not defeat a recovery, but there must be a reasonable probability that there will be such litigation. And so, where, after plaintiffs' intestate and his grantors had been in undisturbed possession for nearly forty

years, under a deed with a defective description, he brought an action to correct the defect in his title arising from such error, and notice was served by publication, and the two years allowed by statute for a motion for a new trial had not expired, *held* that the possibility of the defendants' applying for and obtaining a new trial was too remote to be considered.

7. **Judgment:** QUIETING TITLE: IRREGULARITIES: COLLATERAL ATTACK. The failure of the clerk to mark "filed" and to enter on the appearance docket an original notice showing the acceptance of service by defendants in an action to quiet title, cannot be urged, in a collateral proceeding, against the validity of the judgment, especially where the court has found that the defendants were duly and legally served.

8. **Action:** TO QUIET TITLE AGAINST MISDESCRIPTION: PARTIES. The wives and husbands of the descendants of one who has conveyed land by a wrong description are not necessary parties to an action to quiet the title against such imperfection, on the ground that they have a dower interest in the land; for they have no such interest. (Compare *Lea v. Woods,* 67 Iowa, 304.)

9. **Administrator:** CONVEYANCE OF LAND BOUGHT IN ON MORTGAGE FORECLOSURE. An administrator who buys in land upon the foreclosure of a mortgage belonging to the estate holds it as personal property, and he may convey it without an order of court.

10. **Vendor and Vendee:** FAILURE OF TITLE AS TO PART: RESCISSION OR COMPENSATION. Where the vendor in a bond for a deed is unable to convey a portion of the land because of a defect of title, but such portion did not constitute an inducement to the purchase, and is so situated as not to detract from the value of the whole tract, compensation, and not rescission, is the rule.

11. ———: OBJECTIONS TO TITLE: WHEN MADE. Where a purchaser of land under a contract made certain objections to the title as shown by an abstract furnished by the vendor, and thus induced the vendor to expend money in litigation in removing such objections, *held* that the vendee could not afterwards raise other objections which he knew the vendor could not remove, and then insist upon a rescission of the contract on account of such objections; but that the vendee must, in such case, present all his objections within a reasonable time after being furnished with an abstract.

12. ———: ———: INCUMBRANCE BY CONSENT OF VENDEE. Where land was purchased to be used for a town site on a proposed railway, and the persons interested in the purchase were, with one exception, the same as those interested in the railway, and the purchase was made by one who was agent for both the purchasers and the railway company, and after the oral contract for the purchase had been made, and a part of the consideration paid, but before the bond for a deed had been executed, the same agent procured from the vendor a deed for the right of way for

the railroad over the same land, *held* that the purchasers could not set up such right of way as an incumbrance on the title, for the purpose of avoiding the contract of purchase; and especially is this so in view of the fact that a right of way through the land was necessary to render the purchase valuable for the purpose for which it was made.

13. ———: TIME AS ESSENCE OF CONTRACT: WAIVER. Time should sometimes be regarded as of the essence of a contract for the sale of land, even when it is not so expressly stated, if the object and purposes of the contract so indicate, and it has been so treated by the parties. But if time be regarded as of the essence of the contract in this case, *held* that it was waived by the vendee by giving the vendor time, after the day fixed for performance, to perfect his title.

14. ———: OBJECTIONS TO TITLE: RESCISSION OF CONTRACT: TERMS. A vendee of real estate under a bond for a deed cannot rescind the contract on account of imperfections in the title, without tendering back as good a title as the vendor had when the contract was made. In other words, he cannot further incumber or becloud the title, and then tender it back, and demand a rescission.

15. ———: ACTION FOR PURCHASE MONEY: DELAY IN PERFECTING TITLE. In an action for the purchase money of land sold under a bond for a deed, it appeared that there was a delay on the part of the vendor in perfecting his title, but no right of rescission had accrued to the vendee, and no substantial damage had resulted to him on account of the delay, and he had not been disturbed in his possession of the premises. *Held* that the vendor was entitled to recover the purchase money with the stipulated interest.

### *Appeal from Marion District Court.*

### FRIDAY, MARCH 11.

ACTION in equity. Judgment for the plaintiffs, and defendants appeal.

*J. S. Polk* and *J. M. St. John*, for appellants.

*Bousquet & Earl*, for appellees.

SEEVERS, J.—This action was commenced in September, 1883, by Andrew Stevenson, and the petition states that he sold to the defendant Polk, in July, 1881, certain described real estate for $7,850, of which sum $1,200 was paid, and that the said defendant agreed to pay the residue of the purchase money on the first day of March, 1882, with eight per

cent interest; and it was agreed that said defendant might enter into possession of the real estate, and make improvements thereon; that said agreement was reduced to writing, but no copy was attached, for the reason that it was in possession of defendants; that said Polk executed to said Stevenson his promissory note for the balance of the purchase money, payable on the first day of March, 1882, and has conveyed the said real estate to the Union Land Company, and such corporation is made a defendant; that said Polk and his grantee entered into possession of the premises under the contract, and that such possession has not been in any respect disturbed. Said Stevenson expressed a willingness to fully comply with said agreement on his part, and convey the real estate by warranty deed as he had agreed. The relief asked is that the plaintiff recover judgment against defendant Polk for the purchase money due, with interest, and that a lien on said real estate in his favor be established, and the defendants' equity of redemption foreclosed, and the premises sold on special execution, and that a general execution issue for any balance of said judgment remaining unsatisfied against said defendant Polk. Afterwards the death of said Stevenson was suggested, and the action revived in the name of D. B. Stevenson, administrator of the estate, as plaintiff.

The defendant Polk filed a separate answer, denying that he entered into possession of the real estate; but he admitted that he, as trustee for the Union Land Company, had purchased such real estate under a written contract, and that said Stevenson well knew that said contract was made by him as such trustee, and not in his individual capacity. The conveyance to the Union Land Company was admitted, but Polk alleged that the same was done in order to discharge and relieve him of the trust; and he asked that the action be dismissed.

The land company answered the petition, and denied all allegations not admitted, and alleged that said Polk, as its trustee and agent, purchased of the intestate certain described

real estate, upon certain conditions, and that the contract was reduced to writing. It is sufficient to state here that said defendant pleaded that the intestate and plaintiffs had failed to comply with said contract on their part. It is admitted that said defendant entered into possession under the contract, and is still in possession; that afterwards said Polk fully executed his trust, and conveyed the real estate to his co-defendant; that defendant has been at all times ready and willing to comply with the contract, but that plaintiff's intestate, at no time prior to bringing the action, was seized of the title to said real estate in fee-simple, unincumbered, and that said intestate at all times has been unable to perform the contract on his part, and that plaintiff is unable to comply therewith; that on or about March 12, 1882, said intestate furnished defendant's attorney an abstract of the title to the real estate, which showed that the title to a large part thereof was defective, and other portions incumbered, of which defects the intestate was duly advised; and thereafter the defendant waited over two years for the intestate to perfect his title, and, failing to do so, the defendant, in September, 1882, notified the intestate that it would wait no longer for a title, and that it would insist on a rescission of the contract, and then offered and declared the same rescinded, and offered to restore the plaintiff to the possession of the real estate, and to account for rents and profits, and demanded repayment of the money paid on said contract, which the intestate declined to do, but insisted that defendant should accept a deed (though none was tendered) conveying an imperfect title. The said defendant also pleaded that the chief inducement for the purchase of the land was for the purpose of laying out a town-site at a proposed station on the Des Moines & St. Louis Railroad, then in process of construction, which was well known to the intestate, and that, under a statute, no such town could be laid off, and the plat recorded, unless there was a perfect record title in the proprietors; and, because of its inability to lay off and record the plat of such

town, it suffered special damage.   Wherefore the said defend-
ant asked that its answer be treated as a cross-petition, and
that the contract be rescinded, and the plaintiff be required
to pay the defendant $1,200, with interest, and that defend-
ant have a lien on the real estate therefor; that an account-
ing of the rents and profits be had, and the damages of the
defendants ascertained, and that defendant have such other
relief as it may be entitled to.

The administrator filed a replication, and denied that Polk
purchased the land as trustee for his co-defendant, and
pleaded that the title was perfect in every respect in the
intestate, except a mortgage, which had been paid; and that
the intestate and his grantors have had actual, open, noto-
rious and peaceable possession of the premises for more than
ten years; and all affirmative allegations in the cross-petition
were denied.

There is a discrepancy in the land as described in the peti-
tion and the answer and contract.   As to this, it was pleaded
in the replication that a mistake had been made in describing
the land in the contract, and it was asked that the same be
reformed so as to conform to the intention of the parties.

The widow and heirs at law of the intestate intervened,
and were made plaintiffs, and adopted the prior pleadings
filed by the intestate and administrator, and asked the same
relief.

The defendants, in a subsequent pleading, denied that there
was any mistake in describing the land purchased in the con-
tract, and denied that the intervenors were the widow and heirs
at law of the intestate.   There were two amendments to the
petition filed, which demanded the same relief as the peti-
tion.   Substantially the allegations therein were denied.

The foregoing lengthy statement is deemed necessary to
present, in a general way, the issues.   The contention of the
several parties will now be referred to in the order, or nearly
so, as presented by counsel.

I.   The obligation executed by the defendant Polk is in these words:

"DES MOINES, July 23, 1881.

"Know all men by these presents that I acknowledge myself indebted to Andrew Stevenson in the sum of six thousand six hundred and fifty dollars, ($6,650,) which I agree to pay the said Stevenson on or before March 1, 1882, on condition that the said Stevenson and wife shall fully comply with their title bond of even date herewith, wherein they agree to convey to me certain real estate lying and being in Marion county, Iowa.   This obligation to draw interest at the rate of eight per cent per annum after maturity, provided that the said Stevenson and wife shall comply with their title bond aforesaid.   In witness whereof I have hereunto set my hand the day and date first above written.

"J. S. POLK, Trustee."

The bond referred to was executed by the intestate and his wife at the same time as the foregoing, and recites that they are held and firmly bound, in a named penal sum of money, unto J. S. Polk, trustee, and it recites that the intestate and his wife have sold unto the said J. S. Polk certain described land, and contains this provision:   "And if the above-bound Andrew and Maria Stevenson shall make, execute and deliver or cause to be made, executed and delivered, a good and sufficient warranty deed and abstract in fee-simple title to the above-described real estate, then this obligation shall be null and void, otherwise to remain in full force, both in law and equity;   *   *   *   and it is hereby further expressly agreed by and between said parties   *   *   *   that, the party of the second part shall have the right to enter on said land, and make changes and improvements as he may deem best for his interests."

It is provided by statute that where the vendor of real estate has given a bond to convey the same on the payment of money, he may "file his petition, asking the court to require the purchaser to perform his contract, or foreclose

and sell his interest in the property." The vendee shall be treated as a mortgagor, and his rights may be foreclosed in the same manner.   Code, §§ 3329, 3330.

The plaintiffs contend that this action is prosecuted under and in accordance with this statute, and the contention of the defendants is that the action is for specific performance.  We are clearly of the opinion that the action is brought under the statute to recover the purchase money of real estate, and to foreclose the interest of the vendee therein, and that no tender of a conveyance is required.   This, we think, is apparent, for the reason that the vendee is to be treated as a mortgagor, and his rights to the real estate foreclosed in the same manner; and it has been so held in *Winton v. Sherman*, 20 Iowa, 295, and *Montgomery v. Gibbs*, 40 Id., 652.   The reason of the rule is that a court of equity can so mould the judgment or decree as to fully protect the rights of the vendee.

1. TITLE bond: foreclosure: tender of deed.

Appellants cite and rely on *School District No. 2 v. Rogers*, 8 Iowa, 316, and *Berryhill v. Byington*, 10 Id., 223. These were actions at law, and in such actions a different rule prevails.

II.  The district court rendered a personal judgment against Mr. Polk on the obligation signed by him as trustee. It is insisted by appellants that such judgment is erroneous, and the plaintiff's claim otherwise. Counsel for the latter cite and rely on *Bryan v. Brazil*, 52 Iowa, 350; *Wing v. Glick*, 56 Id., 473, and *American Ins. Co. v. Stratton*, 59 Id., 696. There is no difference in principle between this and the two cases first cited.   All are based on unnegotiable instruments or contracts, and there is nothing to indicate, on the face of either the title bond or obligation, for whom the defendant Polk was trustee; and it was held in the cited cases that parol evidence was inadmissible to show such fact.

2. CONTRACT: signing as trustee: parol to disclose capacity: who liable.

The appellants claim, however, that it is always admissible to show by parol, where a person signs his name to an

obligation as agent, and the name of his principal is not dis-
closed on the face of the obligation, whose agent he is, that
he may escape personal liability to a person who has full
knowledge of the facts.   It was so held, it is said, in *Met-
calf v. Williams*, 104 U. S., 93.   If this be conceded, the
burden is on the defendant to show that the intestate had
knowledge that Mr. Polk was acting as trustee for the land
company at the time the contract was entered into.   This
should not be left in doubt, for either the land company or
Mr. Polk is personally liable on the obligation.   If the lat-
ter is discharged, the former must be bound.   The contract
was entered into by N. C. Towne, as agent for Polk, trustee.
There is a written agreement showing the agency.   It was
executed on the first day of April, 1881.   The land company
was not incorporated until the sixth day of April, and the
incorporators are Mr. Polk and three other persons.   Mr.
Towne testifies that the intestate had knowledge that Mr.
Polk was "trustee for said several parties."   By said several
parties the witness undoubtedly meant the other persons,
besides Mr. Polk, who were interested in the company.   We
are unable to find from the evidence that the intestate, at the
time the contract was entered into, had any knowledge that
Mr. Polk was acting as trustee for the land company.   It is
immaterial what knowledge he afterwards acquired, and it is
likewise immaterial whether Mr. Polk was the trustee for
persons jointly interested with him, for the reason that there
is no such issue.

III.   The plaintiffs did not trace their title back to the
general government, by introducing in evidence deeds from
their grantors, but simply showed that the real
estate had been conveyed to the intestate, and
that he had been in open, notorious and undis-
turbed possession of the premises for more
than ten years.   The court held that this was
presumptive evidence of title.   The defendants claim that
in so holding the court erred.   At the same time it is con-

3. VENDOR
and vendee:
action for
purchase
money: de-
fense of de-
fective title:
burden of
proof.

ceded that the burden was on them to show incumbrances, but it is claimed that the burden was on the plaintiffs to show title in themselves or the intestate. The intestate agreed that he would furnish an "abstract." This we understand to mean that he would furnish an abstract of the records in the recorder's office, and of all the records showing title in himself. The object of this abstract was to enable the defendants to determine as to the sufficiency of the title, and facilitate their examination of the records. The abstract furnished showed to whom the land was conveyed by the government, and by and to whom it was afterwards conveyed. Such abstract was examined by the defendants or their attorneys, and certain objections made thereto. Certain defects were pointed out. It is not pleaded as a defense that the intestate did not have a title to any specific part of the land, but that such title was defective only. We therefore think the plaintiffs were not required to trace their title back to the government, by the introduction of deeds or other evidences of title. The title of the intestate was shown and exhibited by the abstract, and the defendants were required either to accept or reject it within a reasonable time. They were in no respect bound by it. But it amounted to an exhibition of title on the part of the intestate, and should have the same effect as if he had placed in the hands of the defendants all patents and deeds showing such a title as the defendants were entitled to under contract, which undoubtedly was a fee-simple title which would vest in them absolute ownership of the real estate free of incumbrances. It has been repeatedly held that a title by adverse possession may be acquired which has the same force and effect as a title based on a grant. *Sherman v. Kane*, 86 N. Y., 57; *Leffingwell v. Warren*, 2 Black, 599; *Heinrichs v. Terrell*, 65 Iowa, 25. Such possession must be at least presumptive evidence of title and of seizin in the person in possession. It must be remembered that the defendants were in the undisturbed possession of the premises, and made objections to the title as

shown by the abstract.  We therefore think, under the cir-
cumstances, that the burden was on the defendant to show
wherein the title, as shown in the abstract, was in any respect
defective.

IV.  One parcel of the land was incumbered by a mort-
gage to the Ætna Insurance Company.  This mortgage was
due January 1, 1883, and, as we understand,
embraced other lands, which are not included in
the contract.  This mortgage, in fact, was paid,
and, as we think, satisfaction duly made of record.  But this
was not done until after the institution of this action, but
prior to the trial in the court below.  It is sufficient if the
title is perfected or incumbrances removed prior to the trial.
If the court can then, by a decree, protect the rights of all
parties, this is all either can justly ask, unless there has been
a rescission, or an offer to rescind, and the party so offering
has done all he is required to do, and was entitled thereto,
at the time the offer was made.  *McKinney v. Jones*, 57
Wis., 301; S. C. 15 N. W. Rep., 160; *Luckett v. Williamson*,
37 Mo., 388; *Montgomery v. Gibbs*, 40 Iowa, 622; Pom. Cont.,
§ 421.

*4. ——: ——: removal of incumbrance.*

Whether the defendants were entitled to a rescission of
the contract at the time it was claimed such an offer was
made, will be hereafter considered.  What we
have said applies to another mortgage, on a dif-
ferent tract of land.  This mortgage was given
to the Pella Manufacturing Company in 1877, and the money
secured thereby was payable in 1878.  It clearly appears
that the mortgage is paid, and it further appears to be satis-
fied of record by J. B. Cotton, secretary and treasurer of said
company.  If Cotton had no such power, it devolved on the
defendants to introduce evidence so showing.  All that was
done in this direction was to show by the articles of incor-
poration that no "instrument affecting the title to real estate
should be binding unless ordered at a meeting of the official
board," and such instrument must be signed by the president

*5. ——: ——: mortgage to corporation: release.*

and secretary. This provision has no application to the release of a mortgage given to secure a debt. We think the release of record is sufficient. Besides this, it has been held that it is not essential that such a release should be established, and that payment of the mortgage is all that can be justly required. *Curran v. Rogers*, 35 Mich., 221.

V. One parcel of the real estate was at one time owned by George Billups, and, as the plaintiffs claim, he con-

6. ——: ——: veyed, or intended to convey, the same to David
——: mere R. Rea, in 1848, but that the description of the
possibility of
litigation. land is not strictly correct. It, however, clearly appears that the grantee, and those claiming under him, have been in the undisturbed possession of such real estate all the time since the execution of such conveyance. The intestate commenced an action against said Billups and others to correct the description in such conveyance, and thus remedy the defect in the title. A decree correcting the misdescription in the conveyance was rendered in such action by the district court. As there was no appearance, a default was entered against the defendants, and the court found that there had been due, legal and timely service of notice. To this decree the defendants object, because service was made on six of the defendants by publication only, and proof of the publication of notice was not marked "Filed," and entered on the appearance docket. It is said that the defendants so served may, within two years thereafter, under the statute, obtain a retrial as a matter of right. This is true, but it is exceedingly improbable, and it may, with reasonable safety, be affirmed that if they did so, they would not succeed in having the decree set aside. The long-continued adverse possession would, without more, defeat the action. A mere possibility that there will be litigation is not sufficient. There must be reasonable probability that such will be the case. Pom. Cont., §§ 203, 204. It seems to us that there is not and cannot be the slightest probability that the persons served by publication will ask a retrial.

The decree is further objected to because the original notice showing that the acceptance of service on two of the defend-

**7. JUDGMENT: quieting title: irregularities: collateral attack.** ants was not marked "Filed," or entered on the appearance docket. This is a collateral attack on the decree, and it appears certain to us that the failure of the clerk to file papers, and enter the same on the appearance docket, in no manner affects the jurisdiction of the court; and especially is this so when it was found by the court that notice to the defendants had been properly and legally served. Counsel cite and rely on *Nickson v. Blair*, 59 Iowa, 531, but that was a direct proceeding on appeal. We are unable to see that the failure of the clerk to so file and enter on the appearance docket any paper, in the absence of a statute so providing in express terms, can oust the court of jurisdiction, or have the effect to render the judgment void when attacked in a collateral proceeding.

It is further urged that it appears that some of the defendants in the action were married, and, as their wives or hus-

**8. ACTION: to quiet title against mis-description: parties.** bands were not made parties, their right of "dower" has not been extinguished. But it seems quite clear that no such right of dower attached. In legal effect, Billups conveyed to Rea the premises by the proper description. The mistake in incorrectly describing the premises intended to be conveyed is immaterial, so far as the right to dower is concerned. *Lea v. Woods*, 67 Iowa, 304.

VI. In discussing the objections made to the title to what the parties designate as the "Hutchinson" tract of land,

**9. ADMINISTRATOR: conveyance of land bought in on mortgage foreclosure.** it should be assumed that a fee-simple title was vested in E. R. Hutchinson, and that he contracted to and did sell the same to one Vink, who failing to comply with the terms of the sale, an action was commenced against him, in which the plaintiff recovered judgment, and the interest of Vink in the real estate was sold under a special execution. H. P. Hutchinson was administrator of the estate of E. R. Hutchinson, and he became the purchaser, and the real estate was conveyed by

the sheriff to "H. P. Hutchinson, administrator." Upon what the plaintiffs claim was a proper application, the proper circuit court authorized said Hutchinson, as such administrator, to sell said real estate, and the plaintiffs claim that said proceedings were in every respect regular and sufficient; but the defendants claim otherwise. We do not deem it necessary to determine the questions thus presented. Vink was, in effect, a mortgagor, and the mortgage was foreclosed, and the real estate sold and conveyed as above stated. Such mortgage, and the indebtedness secured thereby, constituted personal assets of the estate, and as such came into the executor's hands. It was his duty to collect the same, and properly account therefor. When the mortgage was foreclosed, and the land conveyed to "Hutchinson, administrator," it was still his duty to convert the land into money, and account therefor. But he was the owner of the legal title to the land, and could sell and convey it without making any application to the court for that purpose, and the person to whom he so conveyed would take the title, and was not required to see that the purchase money was properly accounted for. *Lockman v. Reilly*, 95 N. Y., 64; *Long v. O'Fallon*, 19 How., 116.

Some objections are made to the legality of the foreclosure proceeding against Vink, but, clearly, they do not present any valid reasons why the judgment should be held to be void in a collateral attack thereon. There are also objections to other judgments or decrees in actions brought by the plaintiffs to cure certain defects of like character to those heretofore stated, to which the rules heretofore stated fully, in our opinion, apply. We deem it unnecessary to more particularly refer to them.

VII. There is a deficiency of four acres of land described in the bond for a deed. That is, there is that quantity to which it is conceded the intestate had no title. Conceding that the defendants relied on or stated this as an objection to complying with the contract when the abstract was presented to them, we think it is not a valid objection. In the first place, the

10. VENDOR and vendee: failure of title as to part: rescission or compensation.

four acres did not constitute an inducement to the purchase, and is so situated as not to detract from the value of the whole tract. In such case the law is well settled that compensation is the rule. The whole number of acres sold was at least 314. But we do not think the defendants are entitled to compensation for such deficiency, for the reason that we are satisfied from the evidence that the four acres never were sold or purchased, and were described in the bond for a deed by mistake, and therefore the district court correctly reformed it in this respect.

VIII. It is shown that there are certain highways on the land which are used by the public. The fact that such was the case was one of the inducements to the purchase, so that the public could readily reach the townsite proposed to be laid off. For the purpose for which the defendants desired to obtain a portion of the land, such highways were absolutely essential. We are satisfied from the evidence that the defendants did not object to the title for this reason when other objections were made to the abstract and title. They well knew that this was something the plaintiff could not remove, and, if they regarded the existence of highways as an objection to fulfilling their contract, they were bound to so indicate when the other objections were made. Instead of doing this, the intestate had reason to believe he could remove the objections made, and perfect his title, and proceeded to do so, and thereby incurred expense in reliance thereon. The defendants were bound to present all their objections to the title at the time the abstract was presented to them, or within a reasonable time thereafter. Besides this, a literal compliance on the part of the intestate cannot be required, but a substantial compliance is sufficient, if thereby the defendants obtain all that constituted the inducement to the purchase. Wat. Spec. Perf., §§ 422–427.

IX. The bond, as we have seen, was executed in July,

11. ——: objections to title: when made.

1881. There was a parol contract entered into prior to that time, and a small portion of the consideration paid. The exact date of such parol contract does not appear. On the sixth day of July, 1881, the intestate conveyed to the railroad company the right of way over the premises, and the road has been constructed and is daily operated. The contract was entered into between the intestate and Towne, as agent for the defendants, or one of them; and he testifies that the right of way was so conveyed as a part of the sale and purchase. There is no evidence contradictory to this, except that it may be said the defendants deny the authority of Towne in this respect, and that they had no knowledge of such fact. The railroad corporation is composed of Mr. Polk and four other persons, and the land company is composed of Mr. Polk and three persons, who are the same persons who are members of the railroad company. Mr. Towne was the agent of Mr. Polk, trustee, and of both of these corporations, and as such procured the right of way, and, as we have stated, made the contract. The object and inducement of the purchase was the location of the town-site on the railroad on the premises. We think the intestate was justified, under the circumstances, in believing Towne had authority to make the contract he did, and that the defendants are bound thereby. Besides this, the defendants knew that, unless the railroad was located and constructed over the land, the town-site would be valueless; and for this purpose and object the purchase was made. Again, no such objection was made to the abstract and title when the other objections were made, and the defendants cannot be permitted to make such objection now.

X. The defendants contend that time is of the essence of the contract, but the contract does not so provide. There is nothing on its face which so indicates. Their contention is that time may be, and should sometimes be, regarded as of the essence of the contract, even when it is not so expressly stated.

This will be conceded when the object and purpose of the contract, reasonably construed, in the light of all the circumstances, so indicate, and it has been so treated by the parties. The covenants in the contract are dependent, and were to be performed on or about the first day of March, 1882. The intestate was then to convey a good title, and the defendants to pay the purchase money. It was not until the twelfth day of March, 1882, as stated in the answer, that the intestate furnished the abstract. No objection was made to this delay, but, the title being defective, as the defendants thought, the plaintiff undertook to obviate such objections. This required time, and the defendants so knew. Conceding that time was of the essence of the contract, such time must have been the day fixed for performance. Clearly, such time was waived, for it is not pretended that there was any offer to rescind made then, or until eighteen months afterwards. During that time the intestate made efforts to have his title approved, but the defendants still thought it was defective, and urged the plaintiff to perfect it, and he was making efforts to do so, until finally, in September, 1883, the defendants made an offer, and elected to rescind. It will be observed that no time of performance was fixed after the time specified in the bond had passed. We therefore do not think that time was of the essence of the contract, or, if it was, there was a waiver; and therefore the defendants are not entitled to a rescission for this reason.

XI. The defendants further contend that they had the right to rescind at the time they made the offer and elected to do so, because of existing incumbrances on the land, and because the intestate was unable at that time to convey such a title as they were entitled to. The bond for a deed was duly acknowledged and recorded. Mr. Polk, trustee, was therefore invested, as between him and the intestate, with an equitable title of record to the premises. Afterwards he conveyed such title as he had to the land company, which was duly recorded. Afterwards the

offer to rescind was made by tendering back to the intestate the title bond, and offering to account for rents and profits, and surrendering possession of the premises. The bond and conveyance to the land company created at least clouds upon the title, and we have been unable to discover any evidence which tends to show that the land company offered to convey to the intestate, or remove the cloud existing by reason of the deed to it.

It also appears that by some contract with the railroad company the land company had the right to locate stations, and this right had been exercised, and a station located on the land described in the contract. A railroad had been constructed over the premises, and the track laid down. This was a permanent structure. The right of way was conveyed by the intestate without any other consideration than that it constituted a part of the sale and purchase. It is therefore apparent that, when the offer to rescind was made, it was inequitable and unjust to compel the plaintiff to take the land back. There had been part performance on the part of the plaintiff by the conveyance of the right of way, or, if this be not true, there was no offer to remove the cloud caused by the conveyance to the land company. It is fundamental that, before a contract can be rescinded by one party, he must place the other party in the same position he was at the time the contract was made, or the power to do so must at least exist. *Burge v. Cedar Rapids & M. R. R. Co.*, 32 Iowa, 101; *Montgomery v. Gibbs*, 40 Id., 652. Many other authorities might be cited in support of the foregoing proposition.

XII. We are unable to find that the defendants were damaged by the delay. There is evidence tending to show, in a general way, that they were. One or more witnesses state that in their opinion the defendants were damaged, but no facts are stated upon which such an opinion could be based. It does not appear that the land has depreciated in value. A town was laid off

on the land, and platted, but the plat was not recorded, as the defendants claim, for the reason that they could not legally do so because of defects in the title and incumbrances on the land. Lots in the town were advertised for sale extensively, and for considerable time, but it does not appear that a single application to purchase was made. No substantial damage, therefore, is shown.

XIII. The defendants being in the undisturbed possession of the premises, with the right expressly given in the title bond to "make changes and improvements" as they saw proper, and having failed to show a right to rescind, or that they have been substantially damaged, should comply with the contract; and therefore the plaintiffs are entitled to judgment for the purchase money, with interest as specified therein.

The judgment of the district court is in all respects

AFFIRMED.