E. C. PLUMMER, Appellant, v. L. S. KENNINGTON.

Real property: CONTRACT OF SALE: ABSTRACT OF TITLE. Where the vendor of real property is required by his contract to furnish a satisfactory abstract of title on a certain date, but time is not made of the essence of the contract, and he is proceeding long after the date fixed, in good faith, to correct the defects pointed out, with the knowledge and acquiescence of the vendee, the vendee is in no situation to take advantage of the fact that the abstract was not satisfactory on the date fixed.

Same: OBJECTIONS TO ABSTRACT: ESTOPPEL: REVIEW ON APPEAL. Where the vendee of land has been furnished with an abstract of title and has pointed out his objections to the title he can not in subsequent litigation claim that the abstract fails to disclose good title because of imperfections not previously objected to; nor will the appellate court review objections to the title which are not specifically argued by counsel.

Same: SPECIFIC PERFORMANCE. Where a suit to enforce a land contract is begun before either party was in a situation to rescind, it is sufficient if the abstract of title to which objections have been made was perfected prior to the trial.

Estates of decedents: PAYMENT OF DEBTS: SALE OF PROPERTY. To subject the land of an intestate to the satisfaction of his debts it must have been resorted to within a reasonable time after the appointment of administration.

Real property: SALE: ABSTRACT: PERFECTION OF TITLE. An objection to an abstract of title that the details relative to a tax deed were not sufficiently shown to enable an examiner to determine the validity of the title is cured by a conveyance of the fee to one under whom the vendor claims title.

Same. Where the abstract of title, as in this case, disclosed that the legal holder of the title died testate and his executors gave a power of attorney by which a conveyance of the land was made, an objection that the deed was void because the executors had no authority to delegate such power was without merit, there having been ample time for the running of the statute of limitations.

*Appeal from Jasper District Court.—*Hon. .W. G.
Clements, *Judge.*

Monday, November 21, 1910.

Action on contract of exchange for agreed price of
stock of goods and fixtures. The defendant prayed that the
contract be reformed so that value only might be recovered,
and by way of cross petition demanded that the contract be
specifically performed. The relief last mentioned was
decreed. Plaintiff appeals.—*Affirmed.*

*Mills & Perry* and *E. M. S. McLaughlin,* for appellant.

*O. P. Myers* and *E. J. Salmon,* for appellee.

Ladd, J.—The parties hereto entered into a written
agreement October 4, 1907, by the terms of which plaintiff
agreed to buy three hundred and ten acres of land, known
as the "Valley View Farm of the Graham Ranch," and to
pay therefor $19,375. Of this he undertook to pay defend-
ant $10,000 and a stock of gents' furnishing goods, shoes,
etc., to be invoiced at once, and, if with fixtures of the
agreed value of $373 this amounted to less than $9,375,
plaintiff was to pay the difference in money less a discount
of $234.35 allowed plaintiff because of the immediate de-
livery of the stock. Upon plaintiff's election before
February 1st following, defendant was to procure a loan
for the $10,000, and up to $11,000 if needed, to cover the
above difference, and possession of the farm was "to be
given March 1, 1908, when second party is to have deed
for the land in usual warranty form with abstract of title,
showing perfect title, free of any incumbrances." The deed
was to be delivered at the State Bank at Prairie City, and
it was stipulated that, "if the first party (defendant) fails
to furnish deed (warranty) together with abstract of title

showing clear and perfect title as above agreed, then he is to pay to the second party cash for the stock of goods as invoiced and cash for the fixtures." The invoice was completed October 7, 1908, amounting to $450 less than estimated with discount out, and plaintiff delivered the goods, and later paid the difference. He notified defendant he would rely on him to procure the loan, and negotiations to that end followed; the defendant submitting abstracts of title to the bank at Prairie City, through which it was proposed to obtain the loan. This was on January 18, 1907, and it forwarded the papers to an insurance company. Upon observing that the abstract did not disclose the title in the appellant's name, the company's attorney notified the bank that it did not care to make the loan. The abstracts were then taken to other attorneys, one of whom examined them, and prepared a written opinion pointing out twenty-two alleged defects, and advising that "the abstractor rewrite the entire abstract, showing each step in the title pertaining thereto in regular order." Thereupon the abstracts with the attorney's exceptions were returned to defendant, who submitted them to the abstractor, who also was an attorney, and the latter, after making a number of corrections, returned them, saying that the abstracts showed good title in Joseph A. Graham, and that he did not "see how any one could object to the condition of the title as it now stands." The banker insisted on submission to the Des Moines attorney again, who responded "that they (the abstracts) have been corrected in some particulars, but in many others, there has been no change; besides, the abstract remains in its confusing and disorderly condition. The abstract is far from satisfactory and the title as it appears therein in our judgment is not acceptable." This was written March 3, 1908. As March 1st was Sunday, the defendant delivered deeds of the land executed by Joseph A. Graham, of whom he had purchased it, and wife to the plaintiff, to the bank on the following day, and

on April 3, 1908, this action for the recovery of the invoice value of the stock of goods, the agreed value of the fixtures, and the $450 paid in cash was begun. Defendant put in issue the allegations with respect to compliance with the conditions of the contract, alleged waiver of strict performance, prayed that it be reformed so as to exact payment of cash value of the stock and fixtures, instead of the invoice price and that fixed for fixtures, and in a cross petition demanded specific performance. On hearing specific performance of the contract was decreed, and, on appeal, the plaintiff first contends that the court erred in not entering judgment for the invoice price of the goods and agreed value of the fixtures, for that, as is said, defendant did not furnish abstracts showing perfect title to the land by March 1, 1908, as agreed.

That the situation may be such as to exact a strict observance of the contract may be conceded. *Primm v. Wise,* 126 Iowa, 528; *Webb v. Hancher,* 127 Iowa, 269; *Nelson v. Chingren,* 132 Iowa, 383; *Fagan v. Hook,* 134 Iowa, 381. But the contract before us did not stipulate that time should be of its essence, and the evidence is all but conclusive that defendant was proceeding in good faith to correct the alleged defects in the abstracts with plaintiff's acquiescence long after the day fixed for performance. In first sending the exceptions to the abstracts to defendant, he wrote, after mentioning that his attorney had said that the abstracts would be rewritten, "Get it fixed as early in March as you can, but get it right." According to defendant's testimony and that of another witness, plaintiff on March 2d expressed confidence that the abstracts would be perfected, and about March 20th, without objection, allowed defendant to have the abstracts copied for his benefit; plaintiff's attorney remarking that this would materially improve them. A few days previous to defendant's assurance that, if anything was wrong about the abstracts, he would see that it would

1. REAL PROPERTY: contract of sale: abstract of title.

be corrected, he had responded "that will be all right."
Before the abstracts had been copied, this suit was begun,
April 3, 1908. Up to that time, neither party has insisted
on performance at the date specified therefor in the contract,
though plaintiff testified otherwise. The defendant had
proceeded with reasonable diligence in efforts to perfect the
record, and to comply with plaintiff's requirements in com-
pleting the abstract. The plaintiff had acquisced therein,
and neither can be permitted to take advantage of the other
because of not performing on the day named. *Hawes
v. Swanzey,* 123 Iowa, 52; *Bales v. Williamson,* 128
Iowa, 127.

II. A difference of opinion seems to have prevailed
among those who examined the abstracts, and this was mani-
fested in their testimony as adduced on the trial. We
shall not review this evidence in detail, for
the circumstances that defendant's witnesses
though experienced as abstractors, had not
been admitted to the bar, while those
called by plaintiff had been admitted to the bar, but had
not learned that a void deed might constitute color of title
on which claim of adverse possession could be based, has
occasioned some hesitation about resting a decision on the
views of the law expressed on either side, and encouraged
the hope that our conclusion on the points raised, even if
uninfluenced by the opinions of those learned experts, may
prove as acceptable. No attention need be given the ab-
stracts save as criticised by the requisitions of the examiners
for plaintiff; other defects, if any, thereby being waived.
*Lessenich v. Sellers,* 119 Iowa, 314. Nor shall we consider
features of the abstracts not specifically argued. It is no
part of the court's duty to review all the requisitions of the
examiners on mere reference to them generally in argu-
ment. The rulings of the trial court are presumed to have
been correct, and, to overcome this presumption, errors
therein upon which reliance is had must be pointed out.

2. SAME: objections to abstract: estoppel: review on appeal.

This much is said, not by way of intimation that any defect in the title. has escaped counsel's attention, but in response to an invitation to review generally the requisition made by the examiners.

As suit was begun before either party was in a situation to elect to rescind, it was enough if the abstract was perfected prior to trial. *Stevenson v. Polk,* 71 Iowa, 278; *Mock v. Chalstrom,* 121 Iowa, 411. It is

3. SAME: specific performance.

suggested that this rule ought not to be applied for that defendant did not have title at the time specified in the contract for performance. See *Nelson v. Chingren,* 132 Iowa, 383; *Primm v. Wise,* 126 Iowa, 528. But he was in a situation to pass title, for the deeds from the title holder had been delivered to the bank as agreed, and no objection on this ground was interposed by appellant.

Reverting now to the criticisms of the abstract, it appears that: (a) William H. Boyer, who had acquired a forty acres of the land, died testate shortly afterwards. His will, devising the tract to his wife, was

4. ESTATES OF DECEDENTS: payment of debts: sale of property.

admitted to probate. She was appointed administratrix of his estate in 1857, but the abstract did not show her discharge or the payment of debts. As title passed directly to the heirs or devisees upon the death of Boyer, the land must have been resorted to, if at all, for the satisfaction of the debts of deceased within a reasonable time after the appointment of the administration. *In re Brigham's Estate,* 144 Iowa, 71. That this might not be done after the lapse of fifty years is too manifest for argument. (b) Alleged defects in the conveyance by the widow and devisees of Jesse Buck were corrected in the abstract furnished April 24, 1908, so that these need not be considered. That the names of the defendants in the action by the widow for admeasurement of dower were not set out in the abstract is of no concern for the widow after she had inherited the interest of the

son who died shortly after the death of testator, and all the devisees conveyed the land to Orren Hiatt under whom defendant claims.

· (c)   Allen Cate acquired the S. W. ¼ N. W. ¼ of section 36, township 70, range 18, and conveyed to Cornelius Brown the south thirty acres of it in 1870.   In 1877 Brown appears to have conveyed about five acres of this land to one Gillis, who also obtained a tax deed for part of the land, but Joseph A. Graham acquired from Gillis through mesne conveyances the parcels thus transferred prior to March 1, 1908.   Some criticism is made of a deed of the south fifteen acres of the forty, but this requires no attention, as the tract is not included in the contract.   Cate does not appear of record to have conveyed the north ten acres of the tract, though Manuel Homer executed a deed of the north (nine and one-half) acres to Jacob Sweetman in March, 1869, and the latter, with his wife, quitclaimed the north ten acres to Joseph A. Graham in November, 1907, but prior to this, August 22, 1902, Martha Forter and others had conveyed the tract to the same grantee.   A decree entered in January, 1908, declared that Cate and wife had executed a deed conveying the ten acres to Cornelius Brown, but that the deed had not been filed for record, and declared that the decree stand in lieu of such record.   No exception is taken to the effectiveness of this decree, and as Brown executed a deed of the north twenty-five acres of the forty to Graham April 25, 1908, appearing on the continuation of the abstract, the criticism, as made of the title of this parcel, that it had not passed from Brown to Graham, is unfounded.

(d)   A tax deed conveying the N. E. ¼ of the N. E. ¼ of the section 36, township 70, range 18, was executed to Brazilla Bowen in 1866, and it is objected that none of the details necessary to enable an examiner to determine its validity are set out.   A sufficient answer is that the

5. REAL PROP-
    ERTY: sale:
    abstract:
    perfection
    of · title.

owners of the fee conveyed to Orren Hiatt, under whom Graham took,. as did also Brazilla Bowen.

(e) The S. E. ¼ of N. E. ¼ of section 35 was conveyed to one Hawk, who died testate, and it appears to have been sold to H. H. Tremble and Char. Baldwin.

**6. SAME.** The executors of the estate of Hawk, who died in England, executed to George Hawk a power of attorney, and, in virtue thereof, the latter executed the deed. Appellant insists that his deed was void, for that the executors might not thus delegate their authority. Conceding that this is so (*Newton v. Bronson,* 13 N. Y. 587, 67 Am. Dec. 89), the deed might afford color of title on which to base claim of title by adverse possesion. *Chicago, R. I. & P. Ry. Co. v. Allfree,* 64 Iowa, 500; *Colvin v. McCune,* 39 Iowa, 502; *Hughes v. Wyatt,* 146 Iowa, 392. And there has been ample time for the running of the statute of limitations since; so that, even if the deed were void, there may have been ample ground for entering a decree October 7, 1908, quieting title against the unknown heirs of Hawk. It is suggested that a former decree is not satisfactory. This is doubtless true, but no objection is raised to this, and, as it is in strict compliance with the requisition of plaintiff's examiners of abstracts, he is not now in a situation to complain. The objections that certain patents did not appear of record were met in the abstract as copied.

The decree of the district court has our approval, and is *affirmed.*