J. L. McCORMICK et al., Appellants, v. ROBERT M. McINTIRE et al., Appellees.

**VENDOR AND PURCHASER:** Rescission—Delivery of Abstract Prior 1 to Trial. An action for the rescission of a real estate transaction, on the ground of failure to furnish merchantable abstract, as per agreement, will be defeated by the furnishing of such abstract prior to trial, time not being made the essence of the contract.

**VENDOR AND PURCHASER:** Rescission—Insufficient Evidence. Evi- 2 dence reviewed, and held insufficient to justify rescission on the ground of fraudulent representations.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

JUNE 25, 1921.

REHEARING DENIED DECEMBER 13, 1921.

ACTION in equity, for the rescission of a contract for the exchange of real property, and to cancel certain deeds and other instruments executed in pursuance thereof. Decree in the court below dismissing plaintiffs' petition, and they appeal.—*Affirmed.*

*Guy A. Miller,* for appellants.

*Miller, Kelly, Shuttleworth & Seeburger,* for appellees.

Stevens, J.—This is an action for the rescission of a written contract for the sale and exchange of real properties, for the cancellation of a deed executed as part performance thereunder, and for other specific and general equitable relief.

1. Vendor and purchaser: rescission: delivery of abstract prior to trial.

The written contract was entered into July 2, 1919, between plaintiffs and the defendant Robert McIntire. By its terms, defendant Robert McIntire agreed to convey a farm of 100 acres, situated near Moravia, in Appanoose County, Iowa, to plaintiffs jointly, in exchange for a residence property situated in Highland Park, Des Moines, Iowa, at a valuation of $7,000, and the payment of $13,000 cash. The contract further provided for the execution of two notes by plaintiff for $10,000 and $3,000, respectively, together with a first and a second mortgage upon the 100-acre farm, to secure the payment thereof. Each party agreed to furnish an abstract, showing a good, merchantable title to the property to be conveyed by them, the transaction to be consummated as soon as the abstracts could be brought down to date, and possession to be exchanged March 1, 1920. On July 5th, plaintiffs conveyed the Highland Park residence to the defendant by warranty deed, which they delivered to one W. H. Deming, with whom both parties had previously listed their properties for sale. Deming turned it over to the defendant, who had it recorded at once. On July 25th, Robert McIntire and Dessie McIntire, his wife, conveyed the 100-acre farm to plaintiffs jointly, by warranty deed, which McCormick caused to be recorded in the office of the county recorder of Appanoose County, without previous delivery to the plaintiffs. On July 23d, plaintiffs, at the request of Robert McIntire, signed two promissory notes, payable to the Blakesburg Savings Bank, for $10,000 and $3,000 respectively, due in five years, together with a first and a second mortgage upon the 100-acre farm, to secure the payment thereof. Robert McIntire delivered the two notes and mortgages to the Blakesburg Savings Bank, which paid him $13,000. This payment repre-

sented the balance due the defendant on the purchase price of the farm. After the deed conveying the Highland Park residence was delivered to Robert McIntire, he gave a mortgage thereon to the defendant A. V. McIntire for $3,000. On November 29, 1919, the plaintiffs, in writing, notified the defendant Robert McIntire, his wife, and the Blakesburg Savings Bank, that they elected to rescind and repudiate the contract and all instruments executed in pursuance thereof, upon the grounds of fraud in its inception, and because the defendant had failed to furnish an abstract showing a merchantable title to the farm, and because of his inability to do so or to convey a good title thereto; and on December 1st, they filed a petition in the office of the clerk of the district court of Polk County, charging that they were induced to enter into the contract of July 2d by the false and fraudulent representations of A. V. McIntire that the farm had three good wells and a never failing supply of water, and that a one-acre tract upon which a schoolhouse was situated was a part of the farm, and also setting up the failure of the defendant to furnish plaintiff an abstract showing a good, merchantable title to the farm. They asked the rescission of the contract, the cancellation of the deed conveying the residence property to the defendant, and that the defendant be required to hold the plaintiffs harmless on the notes and mortgages executed to the Blakesburg Savings Bank, and for all just and proper equitable relief. The court found against the plaintiffs on the merits, but in its decree required that the abstract to the farm be immediately returned to plaintiffs' attorney for examination, and that his requirements and the abstract be returned to the defendant within 10 days; and gave defendants 30 days to perfect the abstract, if it could be done without an action to quiet title; but provided that, if it was necessary to commence an action, sufficient time be allowed therefor. The decree further provided that, unless plaintiffs returned the abstract, with the requirements of their attorney, to the defendant within 10 days, they would be deemed to have waived the defects in the abstract, and supplemental decree would be entered, dismissing the petition. As plaintiffs failed to comply with the requirements of the decree, a supplemental decree was later entered, dismissing plaintiffs' petition.

The facts disclosed by the record are substantially as fol-

lows: Prior to July 1, 1919, both plaintiff and defendant listed the properties involved herein with Kline & Deming, real estate agents at Des Moines, Iowa, for sale or exchange. On July 1st, J. L. McCormick, Robert McIntire, and W. H. Deming went from Des Moines to Moravia, for the purpose of inspecting the farm. The defendant A. V. McIntire, Robert's father, who had previously owned and occupied the farm, joined the above named parties *en route*, and went with them to see the farm. Robert McIntire rode about the premises with the other parties, but remained in the automobile. A. V. McIntire, however, showed McCormick and Deming about the premises, particularly showing them the improvements, and calling attention to the wells and to a new pump in one of them. On the next day after the parties returned to Des Moines, the written contract was prepared and signed by plaintiffs, and a few days later, by Robert McIntire.

It is claimed by plaintiffs that A. V. McIntire, while on the premises, pointed out a schoolhouse on the tract, and stated that it was located on the farm; also stated and represented that there were three wells, one near the house, another near the barn, and a third in the field or pasture, that never went dry, and that they furnished a never failing supply of water. Robert McIntire testified that he heard no such statement, and denied that his father represented him in any sense as agent, but asserted that he went with them because they had not seen each other for some time, to visit. J. L. McCormick and Deming, however, both testified that A. V. McIntire in fact said that the wells never went dry, and that there was always an abundance of water in them. A. V. McIntire denied making any of the statements attributed to him, testifying that he said that the water in the wells was as good as any in that vicinity, and that he offered to measure the water in them, and offered them a drink, to prove his statement. It is also contended by counsel for appellants that A. V. McIntire was either in fact the owner of the land, personally interested therein, or represented Robert. This is denied by the defendants, and is not sustained by the evidence.

There is no doubt that A. V. McIntire, when he lived upon the farm, occasionally hauled water, in dry seasons, with which

to water stock kept thereon. The same was true of tenants who occupied the premises. A. V. McIntire, however, testified that this had not been necessary because of water ·shortage since the well in the field was dug. He admitted that he had hauled water, but explained this by saying that it was when the pump was out of order, and that, after it was repaired, he had no further difficulty. It appears that the schoolhouse yard was fenced, but that, on account of the defects therein, some cattle were grazing on the premises, the day the parties went to look at the farm. The defendants deny that they told plaintiff that they owned the land on which the schoolhouse was situated, and testified that the only reference thereto was for the purpose of indicating the corner, and lines of the farm.

Plaintiffs promptly furnished an abstract of title to the residence property, and delivered it to Deming for the use of the defendant, after the contract was signed. This abstract was examined by an attorney in Des Moines, who made a few requirements as to minor matters, and returned it to the defendant. Although frequently requested and urged to furnish an abstract to the farm, the defendant delayed doing so until some time in September. He offered, however, to deposit $1,000 in a bank, to guarantee the title. This abstract, when examined by appellants' attorney, revealed many defects in the record title to the farm. These defects, however, were not of a serious character, and some were obviated by the statute; while others required only affidavits, to cover them. The examiner also complained of the form of the abstract, and requested that it be put in better shape for examination, and that, when the requirements were met, it be returned to him for further examination. According to the testimony of the defendants, the abstract, with the requirements of plaintiffs' attorney, was turned over to an abstracter, with directions to secure affidavits and to do whatever was necessary to perfect the title. This, of course, necessitated some delay. The defendants did not return the abstract to plaintiffs or to their attorney; but shortly before the trial commenced in the court below, they tendered a new abstract, which, it is claimed, shows a good, merchantable title to the farm. Plaintiffs refused to accept the new abstract, and the trial proceeded. The new abstract is not before us, nor has counsel for appellant

pointed out any defects therein; so that, so far as the court is at present advised, it met all the requirements of the contract. We held, in *Mock v. Chalstrom*, 121 Iowa 411, that:

"Where an action is commenced against a vendor by his vendee, based upon an alleged defect in or failure of title, it will be sufficient to defeat the action if it be made to appear that before trial the title has been perfected. *Stevenson v. Polk*, 71 Iowa 288."

Assuming that the new abstract met the requirements of the contract, it was sufficient upon this point.

With reference to the alleged representations as to the water supply, and as to the ownership of the one-acre tract on which the schoolhouse was situated, the evidence is conflicting; and it is not claimed that Robert made any represen-

2. VENDOR AND PURCHASER: rescission: insufficient evidence.

tations that were false. It is claimed that he was present, and could have heard what his father said. He denied hearing the alleged representations. It was not at all unnatural for defendant, in showing the farm, to have referred to the schoolhouse, in designating the corner, or lines of the farm; and it is not improbable that it was stated that the schoolhouse was situated thereat. We are not persuaded, however, that plaintiff was deceived thereby, or that he believed from the statements made that defendant owned the ground on which the schoolhouse was situated. He must have known that it was used for school purposes. Defendants' delay in furnishing a new abstract may have been inexcusable; but, so far as the record disclosed, plaintiffs were in no wise prejudiced thereby. It is not claimed that the value of the farm was misrepresented, or that it was worth less than the consideration paid.

Plaintiffs further contend that the deed conveying the Highland Park property was delivered to Deming with instructions to hold it until the defendants furnished an abstract to the farm. Deming denies that anything was said about the abstract, or that he was instructed to hold it until a deed was received from McIntire. He testified that he did not deliver it until he received the McIntire deed, but that, on account of a defect in the first deed, a second one was executed on July 25th. Deming's version of the transaction is corroborated to some extent by the

receipt given plaintiffs, and by the fact that they later signed the notes for $10,000 and $3,000 respectively, together with the mortgages given to the Blakesburg Savings Bank to secure the payment thereof, and delivered the same to the defendant. Plaintiffs sought to excuse the execution of the notes and mortgages by saying they were threatened with a lawsuit if they refused. This testimony is not persuasive, and is contradicted. It will be noted that the contract did not make time the essence, and provided that the transaction should be consummated as soon as each party furnished an abstract showing a merchantable title to their respective properties. This allowed a reasonable time; and, so far as the record shows, an abstract meeting the requirements of the contract was tendered before the trial. Plaintiffs did not attempt to repudiate the transaction in September, after it was learned that the record title was imperfect, but, on the contrary, returned the abstract, with the requirements of their attorney, to the defendant, so that the title could be perfected. Evidence offered to show the general reputation of both A. V. and Robert McIntire for good, moral character and truth and veracity was submitted by an equal or greater number of neighbors, who assert that their reputation is good in both respects. This evidence offered little assistance in arriving at our conclusion.

We need not consider the effect of the failure of plaintiffs to comply with the court's decree granting them only 10 days within which to examine the new abstract and furnish defendant with a statement of the objections and requirements of their attorney thereto, except to say that this requirement and provision of the decree in the court below shall not be held to in any wise prejudice appellants' right to demand and receive a merchantable title to the Davis County land, together with an abstract showing same; and to this extent the decree is set aside and modified. We are convinced that the decree dismissing plaintiffs' petition should be sustained. The proof of the alleged fraudulent representations is not sustained by a preponderance of the evidence, and no sufficient reason is shown for rescinding the contract or for the cancellation of the deed conveying the residence property to Robert McIntire.

It follows that the decree of the court below must be and is, in all other respects,—*Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.