J. W. HOUNCHIN, v. J. H. SALYARDS, et al. Appellants.
J. W. HOUNCHIN, Appellant v. R. M. MEREDITH, et al.

**Real property:** CONTRACT TO CONVEY: SUBSTITUTION OF OBLIGORS. A
1  vendor of real property is under no obligation to accept a mortgage from one to whom the purchaser had transferred the property, in satisfaction of his agreement to execute a mortgage thereon, in the absence of consent thereto.

**Same:** BREACH OF CONTRACT: WHEN ACTION WILL LIE. One, placing
2  himself in a position where he is unable to perform his contract to purchase property may be sued for the breach before the day of performance.

**Same:** RECOVERY OF PURCHASE PRICE. One purchasing real property
3  on contract can not enter into possession and retain the same and at the same time defeat recovery of the purchase price.

**Same:** ACTION TO QUIET TITLE: WHO MAY SUE. Where a grantor
4  has executed a conveyance of land with usual covenants of warranty he may have such an interest therein as will authorize him to maintain an action to quiet title; but where the situation of the parties has so changed that all liability on the warranty has been avoided he has no interest authorizing him to maintain such an action.

*Appeals from Taylor District Court.*—HON. H. K. EVANS, Judge.

FRIDAY, OCTOBER 14, 1911.

In the first of the entitled actions recovery for unpaid purchase price of eighty acres of land was sought, and in the second the relief prayed was that title thereto be quieted in plaintiff. The suits were heard together on the same evidence, but separate decrees entered. The decree in the first was as prayed, and in the second the petition was dismissed. The defendants in the first and the plaintiff in the second appeals.—*Affirmed.*

*G. B. Haddock* for plaintiff.

*McCoun & Burrell* and *Wm. Jackson* for defendants.

LADD, J.—The subject in dispute is eighty acres of land. It appears that Joseph B. and William G. Meredith acquired a quarter section in Taylor county in 1858, and that the former died in 1861, leaving him surviving a widow, Nahama G. Meredith, and an only child bearing his father's name. Under the law then in force the widow was entitled to a life estate in one-third, and the child the remainder and the other two-thirds. He died within a year, and the widow took a life estate in the other two-thirds, and after her death an undivided one-half would pass to the nearest heirs of her deceased husband, and the other undivided one-half to the nearest heirs of herself. *Norris v. McGaffick*, 21 Iowa, 201. Her father, Jabez Ward, would have been the widow's nearest heir, had she then died, and as the husband's parents were dead, his brothers, Thomas J. and William G. Meredith, and his sister, Margaret G. Miller, were his nearest heirs. Jabez Ward quitclaimed any interest he then had in the land to

the widow in 1865, and thereupon she instituted an action in partition against William G. Meredith, and a decree was entered setting apart to her absolutely the S. E. ¼ S. W. ¼ of the section and a life estate in the N. E. ¼ S. W. ¼ thereof. Subsequently, in 1875, she executed to William G. a quitclaim deed to the north forty acres and a warranty deed to the south forty. The grantee, William G. Meredith, died testate in 1878, devising the eighty to his son, Samuel Lucien Meredith, who, in 1894, conveyed it by warranty deed to N. C. Scott, and it was by him transferred in the same way to Thomas Laird on the same day, by Laird to M. D. Coombs in 1896, and by Coombs to plaintiff, J. W. Hounchin, in 1900. The evidence leaves no doubt but that, since the conveyance to Scott, until sold by Hounchin in 1908, fourteen to fifteen years, the possession was adverse, if this were possible, as against those entitled to the remainder. Another conveyance by quitclaim deed should be mentioned—that of Thomas J. Meredith and Margaret G. Miller, brother and sister of Joseph B. Meredith, to R. M. Meredith, the wife of E. W. Meredith, a son of William G., deceased.

On January 2, 1908, J. W. Hounchin negotiated a sale to J. H. and Eudura Salyards, agreeing to sell the land to them "for the consideration of $62.50 per acre, to be paid as follows: $200 paid cash in hand, the receipt of which is hereby acknowledged; a promissory note for $100 due March 4, 1908, without interest; $900 to be paid on March 4, 1908. Party of the second part agrees to assume and pay a certain first mortgage loan of $2,000 now on said farm, and party of the first part agrees to loan to party of the second part $1,800 of the purchase price for a term of seven years, from March 1, 1908, at 6 percent interest, payable annually on March 1st each year, on the terms of $200 being payable on each interest pay date, with the option of paying any amount in excess of $200. When party of the second part has completed the

agreements herein contained, party of the first part agrees to deliver to the party of the second part his warranty deed, and complete and perfect abstract of title for said land, and give possession of said farm on same date. Telephone and telephone share are a part consideration of the above farm."

Being aware that his title might prove defective, Hounchin began the suit to quiet title a few days later, but, as this had not been heard, on March 4th following, the parties entered into a supplementary contract, in which they agreed "that the making and executing of one certain mortgage of $1800," on the land in favor of plaintiff by the Salyards, to run from March 1, 1908, to March 1, 1915, at 6 percent interest, payable annually, of which principal $200 shall be paid on March 1st each year, with the option of paying any additional amounts on said date, shall be postponed until party of the first part shall, at his own expense, procure a complete and perfect abstract of title to the above said land; the title thereto now being in the courts of Taylor county, Iowa, for quieting. At that time, and as a part of the same transaction, Salyards paid plaintiff the $900 then due, and plaintiff executed to Salyards and wife a conveyance of the land by warranty deed; the grantees assuming the payment of an existing mortgage thereon of $2,000. The grantees immediately went into possession, and on November 12th of the same year entered into a contract of sale with Ethel Hounchin by the terms of which they undertook to sell the land to her for $65 per acre, paying $200, and agreeing to pay $1,200 March 1, 1909, assume the payment of the existing mortgage, and take care of the $1,800 deferred payment as stipulated:

Possession of said land is to be given on March 1, 1909, at which time the said J. H. Salyards and Eudura Salyards agree to execute and deliver to the said Ethel Hounchin their good and sufficient quitclaim deed convey-

ing said premises. The first parties further agree the title to said premises shall be in as good condition on March 1, A. D. 1909, as it now is. It is further understood by all the parties hereto that the said J. H. Salyards purchased said land from one J. W. Hounchin, and that he entered into a contract in relation thereto with the said J. W. Hounchin, which contract was thereafter amended as heretofore stated; that as a part of said contract the said J. H. Salyards agreed to execute and deliver to the said J. W. Hounchin a mortgage on said premises for $1,800, the same to be second to the mortgage for $2,000 now on said premises; but it was agreed that the execution of said mortgage was to be postponed until the first party therein, viz., the said J. W. Hounchin, should at his own expense procure a complete and perfect title to said land; that he has not done so up to the present time; that if the said J. W. Hounchin should comply with his said contract, he should be entitled to have the owner of the land execute and deliver to him a mortgage for $1,800, second to the one already thereon for $2,000, and in that case the second party herein, for herself and assigns, agrees that said mortgage shall be executed as provided in said contract and amendment; and that the said J. H. Salyards shall be held harmless, and relieved of all further responsibility, because of any provisions therein contained. And the second party hereby assumes said contract and amendment thereto, together with all the obligations therein cast upon the said J. H. Salyards. It is also understood that the Farmers' Telephone, and the shares of stock accompany the same, shall pass with the premises hereintofore described.

On March 1, 1909, the $1,200 was paid, and Salyards and wife signed and acknowledged two quitclaim deeds, one to Ethel Hounchin as grantee, and the other to Clarence Edwin Meredith, and delivered them to E. W. Meredith. It appears that the latter had negotiated the purchase, and paid the price, and that he caused the deeds to be so made with a view of future delivery of the last mentioned to his son, if his deportment pleased, but, if not, then of delivering the one running to Ethel Hounchin.

(his daughter), to hold in the land in trust. The deeds remain in his possession.

Such is the record on which the plaintiff demands in the one action that title be quieted in him against R. M. and E. W. Meredith and Ethel Hounchin, and in the other that he have judgment against J. H. and Eudora Salyards for the deferred payment of $1,800, and that this be established as a lien on the land as against any interest Ethel Hounchin and Clarence Edwin Meredith may have acquired. We shall dispose of the last -mentioned case first.

### ACTION FOR PURCHASE PRICE.

I. In their answers in the action for the recovery of the deferred payment of $1,800, the defendants plead the defective condition of the will by reciting the facts as heretofore stated, but make no tender of a

1. REAL PROP- ERTY: contract to convey: substitution of obligors.

conveyance of the land, nor demand the cancellation of the obligation to pay. In effect, the answer is a plea in abatement, pleading that, as a condition precedent to recovery, title must be perfected in plaintiff. Had the Salyards retained the land, there might have been some ground for insisting upon the terms of the contract by which the execution of the mortgage of $1,800 "shall be postponed until party of the first part shall, at his own expense, procure a complete and perfect abstract of title."

But as seen, they had sold and conveyed the land by quitclaim deeds, with the stipulation that they be kept from harm, and thereby rendered themselves powerless to perform their part of the contract; that is, to execute the mortgage. That their grantee promised to do so affords no excuse. This was not binding on the plaintiff. He in no manner consented or acquiesced in such arrangement, and, this being so, was not required to accept the obligation of Ethel Hounchin or of any one else in lieu

of that of J. W. and Eudura Salyards. *Rappleye v. Racine Seeder Co.,* 79 Iowa, 227; *Worden v. Ry.,* 82 Iowa, 735. "Contracts whereby one party agrees to extend credit to the other can not be arranged by such other so as to require it to be extended to the assignee." 3 Page on Contracts, 1941.

But it is insisted that, even though the Salyards might not execute the mortgage, they were not disabled from paying the money. They were to pay $200 "on each interest pay date, with the option of paying any amount in excess of $200." As the interest was to be paid annually, this option might

*2. SAME: breach of contract: when action will lie.*

not be exercised until a year subsequent to the execution of the mortgage. The additional contract does not obviate this conclusion, though fixing the date of the mortgage and time for the payment of the interest and $200 yearly, and allowing more than this to be paid if tendered on the day named. Unless the title were perfected on that particular day of the year—that is, March 1st—the obligation was to execute a mortgage with certain conditions, and as to every other day there was a clear breach of the condition of the contract on the part of the Salyards. Having disabled themselves for performance, they are not in a situation to insist that the action is premature. If a party disables himself from performing his contract, he may be sued as for breach thereof before the day of performance arrives. *Crabtree v. Messersmith,* 19 Iowa, 179; *Jewett v Brooks,* 134 Mass. 505; *Taylor v. Bradley,* 39 N. Y. 129 (100 Am. Dec. 415); *Short v. Stone,* 8 Q. B. 358; *Lee v. Pennington,* 7 Ill. App. 247.

The suit then can not be said to have been premature. But, as seen, the plaintiff had not perfected his tile, for

*3. SAME: recovery of purchase price.*

the reason that the widow of Joseph B. Meredith was still living, and, of course, her heirs, entitled to take an undivided half interest in the premises, might not be ascertained until

her death. Conceding this, however, it does not follow that the Salyards can retain the land and refuse payment of the balance of the purchase price. The law will not permit the purchaser to obtain possession under contract or deed, and, without returning the property, defend against an action for the purchase money upon the ground of the title being defective. If this were permissible, he might retain it indefinitely, and, although enjoying the possession and use undisturbed, deprive the vendor of the consideration. As said in *Harvey v. Morris*, 63 Mo. 475; "Where a purchaser of land, by virtue of the contract of purchase, is put in possession of the land, he can not resist the payment of the purchase price without offering to restore the possession thus acquired by him to the vendor. He can not be permitted to occupy, possess, and enjoy the profits of the land, and at the same time be allowed to withhold the price agreed to be paid." The principle is well stated in *McIndoe v. Morman*, 26 Wis. 588 (7 Am. Rep. 96); "The remedy of the purchaser, where the title of the vendor fails, or he is unable to make conveyance as stipulated by the contract, is to rescind the contract, or offer to, and to restore the possession, in which case he may recover the purchase money advanced and the interest, together with the value of his improvements, deducting therefrom such sum as the use of the premises may have reasonably been worth; and, if necessary for his protection, the court will also provide by the judgment that the possession be not surrendered until the amount so recovered shall have been paid or otherwise secured to his satisfaction. If, on the other hand, the purchaser chooses not to rescind, but to retain possession under the contract, he can do so only upon condition that he pays the purchase money and interest according to the contract. In the latter case, or rather, when the purchaser does not elect to rescind, it is considered that he is willing to receive such title as the vendor is able to give, and content with the personal

responsibility of the vendor upon his covenants in case the title actually fails and he is afterwards dispossessed." See, also, as announcing like conclusions, *McLeod v. Barnum*, 131 Cal. 605 (63 Pac. 924); *Sanderlin v. Willis*, 94 Ga. 171 (21 S. E. 291); *Wyatt v. Garlington*, 56 Ala. 576; *Dahl v. Stakke*, 12 N. D. 325 (96 N. W. 353); *Helvenstein v. Higgason*, 35 Ala. 259; *Dunn v. Mills*, 70 Kan., 656 ('79 Pac. 146, 502).

As the Salyards disabled themselves to perform and did not tender possession, the court rightly entered judgment against them for the amount of the deferred payment, with interest and established the judgment as a lien on any interest they acquired under the plaintiff's conveyance to them. It follows that the decree in this action for the recovery of the purchase money must be and is *affirmed.*

SUIT TO QUIET TITLE.

II. The circumstance that plaintiff did not retain title, but had conveyed the land to the Salyards by warranty deed with usual covenants, would not alone defeat his right to maintain the action to quiet title. Section 4223 of the Code provides that "an action to determine and quiet the title of real property may be brought by any one, whether in or out of possession, having or claiming an interest therein, against any persons claiming title thereto, though not in possession." This statute enlarges, but does not limit, the jurisdiction of courts of equity in such cases; *Wehrman v. Conklin*, 155 U. S. 314 (15 Sup. Ct. 129, 39 L. Ed. 167); and, though there may be authorities to the contrary, the more recent decisions hold that, where the payment of a part of the purchase price has been deferred until title shall be perfected, a grantor who has executed a conveyance of the land with the usual covenants of warranty has such an interest therein as entitles him to maintain

4. SAME: action to quiet title: who may sue.

an action to quiet title. *Styer v. Sprague*, 63 Minn. 414 (65 N. W. 659); *Sutliff v. Smith*, 58 Kan. 559 (50 Pac. 455); *Pier v. Fond du Lac Co.*, 53 Wis. 421 (10 N. W. 686); *Begole v. Hershey*, 86 Mich. 130 (48 N. W. 790). This is on the ground that he may be liable on the warranty and must obtain the relief in order to procure the deferred payment. If the record were such as to indicate an interest of plaintiff such as this, we would experience, in ascertaining whether the Merediths were interested in their land, some difficulty in harmonizing our previous decisions. See *Norris v. McGaffick*, 21 Iowa, 201; *Marray v. Quigley*, 119 Iowa, 6.

Though plaintiff executed a warranty deed, the situation has become such as to preclude liability on its covenants to the present owners of the land. Whatever interest the Salyards acquired under the deed, they have since transferred by quitclaim deed to Ethel Hounchin or Clarence Edwin Meredith, and so done in pursuance of a contract to keep them harmless. Manifestly no claim because of defect in title, then may be successfully asserted against the Salyards or plaintiff by Ethel Hounchin or Clarence Edwin Meredith because of any defect of title, and if not the plaintiff is not in a situation to ask that this title be quieted in him for his protection against the contingency of the assertion of a claim of damages for breach of warranty by the present owners, and therefore has no such interest in the land as will sustain an action to quiet title. The petition was rightly dismissed. Both decrees have our approval.—*Affirmed.*