W. H. VAN DUZER, Appellant, v. E. J. ENGELDINGER et al., Appellees.

No. 39702.

NOVEMBER 21, 1929.

*Fred E. Hansen,* for appellant.

*Lee, Steinberg & Walsh,* for appellees.

KINDIG, J.—On August 19, 1920, W. H. Van Duzer, the plaintiff-appellant, by written contract sold to E. J. Engeldinger, Earl Rice, Charles Reynolds, H. F. Brown, J. J. Grove, and W.  D. Meltzer, the defendants and appellees, the east half of Lot 1, Block 14, in the original town of Ames. The consideration which appellees agreed to pay appellant therefor was $28,000, payable $1,000 in cash and the balance on future installment dates. A part of the purchase con-

tract provided that, upon payment of the consideration by appellees, the appellant and his wife would make and deliver to the former "a warranty deed for such premises and furnish an abstract showing good and merchantable title * * *."

In accordance with the purchase agreement, appellees took possession of the property about January 1, 1921. There was a building upon this lot, and appellees changed and improved the structure. Each payment due was met by appellees in accordance with the contract. Subsequently, on November 1, 1926, the appellees exercised an option contained in the written undertaking, and elected to make full payment of the consideration on January 1, 1927. Notice of appellees' intention so to do was served upon appellant, as required by the agreement. So, on the day named, appellees were ready, able, and willing to pay the full amount due and completely perform their part of the obligation. But appellant, on the other hand, was not able to furnish an abstract for the property showing "merchantable title." It appears that an undivided seven eighths of the south 16 feet of this lot belonged to other lot owners in said block. Furthermore, according to the record, said owners of the property in that block, through a written stipulation, had agreed that such south 16 feet should be set aside and used as an alley. Hence, appellees objected to the title, and refused payment, accordingly. Thereupon appellant brought this action, to recover the purchase price. By way of answer thereto, appellees alleged the defective title, and, through a cross-petition, asked for the specific performance of the contract. Appellees, in their answer and cross-petition, signified a willingness to accept so much of the title as appellant could furnish, and accordingly asked that the purchase price be abated. Replying to appellees' contention in this regard, appellant stated that the alley was a benefit to the property, and not an incumbrance. Moreover, appellant pleaded that appellees were in possession of the premises, had never rescinded the contract, and hence could not refuse to pay the purchase price.

Upon those issues, the district court granted appellees' prayer for specific performance, and abated the purchase price. As a result, the trial court found that appellees were indebted to appellant in the sum of $16,974.61. Such sum remained, after deducting $1,500 as damages for appellant's inability to furnish

title, as aforesaid. Further complying with the order, the appellees paid the amount due, to the clerk of the court. Acquiescing therein, appellant and his wife executed a deed, conveying to appellees that portion of the premises for which there was title. This instrument was delivered to appellees, and the money which they had previously paid into court was accepted and received by the appellant. Complaint on this appeal is made only to that part of the judgment which relates to the abatement. Under the circumstances of this record, we assume, without deciding, that the appeal was properly taken.

I. At the outset, appellant maintains that in no event can appellees refuse to pay the purchase price when they are in possession of the real estate and have not rescinded the purchase contract. Support for this argument, he insists, can be found in the following adjudicated cases: *Hounchin v. Salyards,* 155 Iowa 608; *Allen v. Adams,* 162 Iowa 300; *Campbell v. Hagerty,* 191 Iowa 1265; *Dierksen v. Pahl,* 194 Iowa 713; *McNair v. Sockriter,* 199 Iowa 1176; *Vanderwilt v. Broerman,* 201 Iowa 1107. A statement of the general rule and an explanation of the reason therefor are set forth in the following quotation from *McNair v. Sockriter,* supra (199 Iowa 1176):

"It is a general rule that a vendee in undisputed possession of the purchased real estate cannot refuse payment of the purchase price for alleged lack of title in the vendor, unless he rescind the contract and restore possession to the vendor. *Allen v. Adams,* 162 Iowa 300; *McCreary v. McGregor,* 183 Iowa 732. It is said in some of the cases that, in such a situation, the purchaser must either rescind or offer to do so, or perform the contract. *Hounchin v. Salyards,* 155 Iowa 608; *Campbell v. Hagerty,* 191 Iowa 1265; *Dierksen v. Pahl,* 194 Iowa 713. The underlying reason for the rule is that, where he does not elect to rescind, it is considered that he is willing to receive such title as the vendor is able to give, and is content with the personal responsibility of the vendor upon his covenants of warranty, in case the title actually fails, and he is dispossessed."

That, in a general way, is the rule. Does it apply to the facts and circumstances in the case at bar? The record must answer the interrogatory. Intimation has already been made that there was a building on the lot at the time of purchase. No part of

the 16 feet in controversy was covered by that structure. There was no need for this alley, so far as appellees were concerned, because the lot is located on a corner, and can be approached from two streets. Most, if not all, of the benefits accruing from the alley apparently were enjoyed by other lot owners in the block, who did not have side street entrances. Possession of the alley, so far as appellees are concerned, was entirely theoretical, as distinguished from actual. They did not use it, unless upon mere incidental occasions.

By the foregoing it is not intended to suggest or intimate that occupancy of the building would not, under some circumstances, and for certain purposes, amount to possession of the entire lot. Yet, within the purview of the doctrine herein relied upon by appellant, such possession would not be sufficient. Whatever the fact was, relating to appellees' possession at the time the contract was executed, remained the same thereafter, because no affirmative act independent of the agreement was taken by them to obtain possession. Appellant had neither title nor possession. Obviously, then, he could not confer title upon appellees or place them in possession.

During all the time here concerned, possession was in the public, under the agreement with the various property owners, as above set forth. In fact, the city paved the public way while appellees were in possession of the building. Consequently, under all these facts and circumstances, the principle announced in the foregoing cases does not apply. Said rule does not require that equity deny appellees the right to retain the premises for which there is title, if they so elect, even though at the same time they reject that portion without title. *Clinton v. Shugart,* 126 Iowa 179; *Ormsby v. Graham,* 123 Iowa 202; *Townsend v. Blanchard,* 117 Iowa 36; *Zebley v. Sears,* 38 Iowa 507; *Presser v. Hildenbrand,* 23 Iowa 483; *Leach v. Forney,* 21 Iowa 271. Significant language in *Ormsby v. Graham,* supra, is:

"He who, having some interest in or defective title to land, agrees to convey a good title, cannot escape his liability in an action for specific performance, provided the purchaser elects to accept such title as the vendor's deed will convey; otherwise the law would enable such a vendor to take advantage of his own fault or wrong. * * * Such a waiver of full performance has

the effect to make the remedy mutual, and partial performance will be enforced, with assessment of damages or abatement from the contract price by reason of the failure to perform in full.''

Likewise, the same thought is expressed in *Townsend v. Blanchard*, supra (117 Iowa 36):

''The case is akin to one where the vendor cannot make a complete title to all the land sold as agreed. In such a situation courts do not permit the vendor to take advantage of his own wrong, and the purchaser has an election to proceed with the purchase *pro tanto*, and to have an abatement from the purchase price for the deficiency in the title.''

Therefore, appellees are entitled to the relief granted by the district court. Purchase was made of the entire lot, without exception, and the title thereto was to be merchantable. Such was the contract which appellees were entitled to have appellant fulfill. Some other title or a lesser part of the lot was not enough. Performance was required of appellant according to the contract. Rather than meeting this requirement, however, he offered a substitute, and thereby defaulted.

Manifestly, then, the course pursued by the trial court was the proper one.

II. An avoidance of such result is attempted by appellant on the theory that he is entitled to a reformation of the contract by interposing an exception therein regarding the alley. Conceding, without deciding, that his pleadings in this respect are sufficient, we find, nevertheless, that the evidence does not support this contention. Neither mistake nor fraud anywhere appears. Throughout the transaction, appellant intended to convey the entire lot and furnish a merchantable title therefor without reservation.

III. Objection is further made by appellant to the principle hereinabove announced, on the ground that the alley was a benefit, and not an incumbrance. Basis for that assertion is predicated upon the following authorities: *Harrison v. Des Moines & Ft. D. R. Co.*, 91 Iowa 114; *Stuhr v. Butterfield*, 151 Iowa 736; *First Unitarian Soc. v. Citizens Sav. & Tr. Co.*, 162 Iowa 389; *Johnston v. Robertson*, 179 Iowa 838; *Kurtz v. Gramenz*, 198 Iowa 222; *Kleinmeyer v. Willen-*

*brock,* 202 Iowa 1049. Illustration of the thought there expressed may be found in the following quotation from *Stuhr v. Butterfield,* supra (151 Iowa 736):

"Ordinarily the ditch, whether of a drainage district or excavated through the land of joining owners as a private enterprise, is essential to the beneficial use of the land, and is no more likely to prove an injury thereto than a highway. * * * That they have not been thought to constitute breaches of covenants of this kind is somewhat confirmed by the absence of any adjudications on the subject. The reasoning by which the exclusion of a highway from a covenant against incumbrances is peculiarly persuasive in justification of a like ruling with respect to drainage ditches and tiles * * * ."

Although that is the rule which will govern under the facts and circumstances set forth in those decisions, yet the doctrine has no application to the case at bar; for here the alley was no benefit to appellees. On the contrary, it was in fact a detriment; because, if the alley did not exist, appellees could build upon and use the 16-foot strip, the same as the other portion of the lot. Another distinction appears between this case and the authorities above cited. There the title was in the vendor or grantor, subject to the road or ditch. Here, however, appellant, the vendor, has no title. If the public way were set aside and vacated, the title would not revert to appellant or appellees. Other owners, as before related, have the fee title to the 16-foot strip, subject to the right of way. It is a case of no title, so far as appellant is concerned, rather than a mere incumbrance. Wherefore, it is plain that the principle contended for by him does not apply here.

Additional propositions are argued; but, after carefully considering them, we are constrained to hold that they are without merit. Further discussion thereof could be of no avail to the parties or the public.

The judgment of the district court is affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and DE GRAFF, JJ., concur.