SOUTHERN SURETY COMPANY, Appellant, v. GLOBE NATIONAL FIRE INSURANCE COMPANY et al., Appellees.

No. 39835.

DECEMBER 13, 1929.

REHEARING DENIED APRIL 16, 1930.

*Kelly, Shuttleworth & McManus*, for appellant.

*Gill & Gill* and *F. E. Gill,* for Globe National Fire Insurance Company and H. W. Henderson, Clerk of the District Court, appellees.

*Kass Bros.* and *W. J. Kass,* for American Bonding & Casualty Company and W. F. Grandy, Receiver, appellees.

EVANS, J.—The detailed facts in the record are somewhat prolix and complicated, though in their final analysis they are reducible to a comparatively simple form. For our own convenience, we avail ourselves of the statement of facts contained in the brief of appellant.

"Prior to the month of January, 1921, the American Bonding & Casualty Company was a corporation engaged in the business of writing casualty and bond insurance in Sioux City, Iowa. It was organized under the laws of the state of Iowa. This company having become financially embarrassed, a temporary receiver was appointed therefor on January 24, 1921. This appointment was made permanent on February 26, 1921. The defendant W. F. Grandy was appointed as such receiver, and is still so acting.

"Prior to the month of August, 1919, and for some time thereafter, the Union Trust & Savings Bank was a corporation engaged in the banking business in Sioux City, Iowa. It was organized under the state banking law.

"During all of the period referred to, the defendant Globe National Fire Insurance Company was a corporation engaged in the business of writing fire insurance in Sioux City, Iowa. Some time since, that company has ceased to write fire insurance, and is in process of liquidation.

"The Globe National Fire Insurance Company, defendant herein, during the years 1919 and 1920 was a depositor in the Union Trust & Savings Bank. On August 27, 1919, the American Bonding & Casualty Company became surety upon a certain depository bond in the amount of $50,000 for the Union Trust & Savings Bank, for the protection of the deposit made in that bank by the Globe National Fire Insurance Company. That bond was continued forward by successive renewals until after the failure of the Union Trust & Savings Bank, as stated hereafter. Throughout all of this litigation, this bond has, for

convenience, been designated as 'Bond A.' On May 1, 1920, the American Bonding & Casualty Company became surety upon a certain depository bond in the amount of $50,000 for the Union Trust & Savings Bank, for the protection of the deposit made in that bank by the Globe National Fire Insurance Company. That bond was continued forward by successive renewals until after the failure of the Union Trust & Savings Bank, as stated hereafter. Throughout all of this litigation this bond has, for convenience, been designated as 'Bond B.'

"In addition to the two depository bonds A and B above described, the Union Trust & Savings Bank had likewise given to the Globe National Fire Insurance Company a third depository bond in the sum of $25,000, upon which the Fidelity & Deposit Company was surety.

"On February 16, 1921, the Union Trust & Savings Bank failed, and a receiver was appointed therefor. Its affairs have since been fully wound up, and the receiver discharged. At the time of the failure of the Union Trust & Savings Bank, as stated, on February 16, 1921, the Globe National Fire Insurance Company had on deposit in said bank the sum of $98,082.72. As stated above, it held depository bonds insuring the payment of this deposit in the total sum of $125,000, of which $100,000 was in the American Bonding & Casualty Company, Bonds A and B, above described, and $25,000 in the Fidelity & Deposit Company as above stated.

"On the 8th day of September, 1919, the American Bonding & Casualty Company placed certain reinsurance on Bond A. A portion of this reinsurance was ceded to the Iowa Bonding & Casualty Company of Des Moines, and a portion to the Southern Surety Company of Des Moines, plaintiff herein. As is the practice in all reinsurance, a portion of the risk on this bond was retained by the American Bonding & Casualty Company. After this reinsurance was effected, as above stated, the risk on Bond A was distributed and carried as follows:

"Bond A

| | | |
|---|---|---|
| American Bonding & Casualty Co. (Retention) | —35%— | $17,500.00 |
| Iowa Bonding & Casualty Co. (Reinsurance) | —35%— | 17,500.00 |

Southern Surety Company
(Reinsurance) —30%— 15,000.00
_____

Total 100%—$50,000.00

"On the 1st day of May, 1920, the American Bonding & Casualty Company placed certain reinsurance on Bond B. A portion of this reinsurance was ceded to the Iowa Bonding & Casualty Company, Southern Surety Company, plaintiff herein, American Surety Company of New York, and National Surety Company of New York. After this reinsurance was effected, as above stated, the risk on Bond B was distributed and carried as follows:

"Bond B.

American Bonding & Casualty Co.
(Retention) —10%—$ 5,000.00
Iowa Bonding & Casualty Co.
(Reinsurance) —20%— 10,000.00
Southern Surety Company
(Reinsurance) —20%— 10,000.00
American Surety Company
(Reinsurance) —20%— 10,000.00
National Surety Co.
(Reinsurance) —30%— 15,000.00
_____

Total 100%—$50,000.00

"As above stated, the American Bonding & Casualty Company failed on the 24th day of January, 1921, and some thirty days later, on the 16th day of February, 1921, the Union Trust & Savings Bank likewise failed.

"On July 28, 1921, the Globe National Fire Insurance Company, defendant herein, commenced an action in the district court of Woodbury County, Iowa, known as Equity No. 42572. The receiver of the American Bonding & Casualty Company and the four insurance companies which had written the reinsurance on Bonds A and B, as above described, were made defendants in that action. The receiver of the American Bonding & Casualty Company filed a cross-petition, asking the same relief that had been asked by the Globe National Fire Insurance Company. The plaintiff in that action, the Globe National Fire Insurance Company, sought to recover directly in its own favor

on the four reinsurance contracts written by the companies on each of the two bonds above described. That action was tried in the district court of Woodbury County, Iowa, and a decree entered therein on the 28th day of June, 1922.

"From the decree of the trial court above described, an appeal was taken by the defendants to the Supreme Court.. The opinion of the Supreme Court on that appeal was filed on the 20th day of November, 1923. *Globe Nat. Fire Ins. Co. v. American Bond. & Cas. Co.,* 198 Iowa 1072. This appeal is designated in the record as 'the first appeal.'

"As is the usual practice between insurance companies, there existed between the Southern Surety Company, plaintiff herein, and the American Bonding & Casualty Company, prior to the failure of the latter company, a so-called treaty of reinsurance. Under the terms of this agreement, it was the practice for each of said companies to cede to the other certain reinsurance upon risks written. It was the practice of each of these companies to keep an open account of credit and charge between themselves and to make periodic settlements by exchange of checks to balance these accounts. On the date of the failure of the American Bonding & Casualty Company, January 24, 1921, exclusive of any liability arising on Bonds A and B, written for the Globe National Fire Insurance Company, above described, there was owing to the Southern Surety Company from the American Bonding & Casualty Company the sum of $15,121.21. This sum was allowed and established as a claim against W. F. Grandy, receiver of the American Bonding & Casualty Company, on September 13, 1928. The claim due the Southern Surety Company from the American Bonding & Casualty Company was in no way pleaded in the action brought by the Globe National Fire Insurance Company, Equity No. 42572, above described, until after the opinion of the Supreme Court on the first appeal.

"Under the opinion of the Supreme Court on the first appeal, certain matters were sent back to the trial court for further determination by that court. (Supplemental opinion, *Globe Nat. Fire Ins. Co. v. American Bond. & Cas. Co.,* 198 Iowa 1080.) Before the hearing in the trial court under the authority of the supplemental opinion referred to, the Southern Surety Company filed an amendment to its answer. This amendment

is shown in full in the abstract herein, and consisted of Divisions V, VI, VII, and VIII. In Division VIII of said amendment, the plaintiff herein, Southern Surety Company, pleaded as a counterclaim or offset against the amount claimed to be owing by it either to the American Bonding & Casualty Company or the Globe National Fire Insurance Company, its claim held against the American Bonding & Casualty Company, which claim it was alleged was in the amount of $16,278.01. The Globe National Fire Insurance Company immediately thereafter filed a motion to strike this amendment from the files. This motion was overruled as to all divisions of said amendment except Division VIII, as to which it was sustained. Thus all question of counterclaim was eliminated from the issues in that case.

"From the action of the trial court striking these allegations of counterclaim and offset from that pleading, an appeal was taken by the Southern Surety Company to the Supreme Court. The opinion of this court on that appeal was filed on the 27th day of October, 1925. *Globe Nat. Fire Ins. Co. v. American Bond. & Cas. Co.*, 200 Iowa 847. This appeal is known in this record as 'the second appeal.'

"After the determination of the second appeal, the case then went back to the trial court for final determination under the supplemental opinion of this court entered on the first appeal. The trial court refused to allow this plaintiff, defendant in that action, the proper credits, and to make the proper pro-rata allowances under the contracts of reinsurance, and entered its decree fixing such amounts over this plaintiff's protest. This decree was entered in the trial court on January 25, 1926. From this decree so entered, this plaintiff and its codefendants took a further appeal to the Supreme Court. The opinion of the Supreme Court on this appeal was filed on the 25th day of October, 1927. *Globe Nat. Fire Ins. Co. v. American Bond. & Cas. Co.*, 205 Iowa 1085. This is known as 'the third appeal.'

"On this third appeal, final judgment was entered in the Supreme Court. The final decree of that court, rendering judgment against each of the defendants, is shown as part of Exhibit 15. By the provisions of that decree, it is finally adjudged that this plaintiff is indebted on account of the reinsurance written by it for the American Bonding & Casualty Company in the sum of $14,240.70, and that, as of May 15, 1928, there had ac-

cumulated thereon interest in the sum of $7,301.03, making a total of $21,541.73.

"The three reinsuring companies other than the Southern Surety Company against whom judgment was rendered in that action had no counterclaims which they cared to prosecute, and therefore paid the judgments rendered against them."

The accuracy of the foregoing is not conceded by the appellee. But we deem it sufficiently accurate as a basis of discussion of the decisive features of the controversy.

The foregoing may be summarized in its decisive features, and reduced to small compass. For convenience, we shall abbreviate the names of the three corporations that figure in the facts, and shall denominate them, respectively, the Globe, the American, and the Southern.

Prior and up to the year 1921, the Globe carried large insurance. The American was its insurer. The American reinsured aliquot parts of this risk in other companies, one of which was the Southern. The risk resulted in a large loss. The ordinary procedure would have been for the American to pay the loss, and thereupon to call upon each reinsurer to pay its quota thereof. But the American had become insolvent, and was in the hands of a receiver, and could not pay. Thereupon, the Globe brought a suit in equity in the district court, known in the record as Case No. 42572, asking, in substance, that it be subrogated to the rights of action of its insolvent insurer, the American, and that, pursuant to such subrogation, it recover from each reinsurer its proper quota of the loss. On the face of the policies (or bonds), there was no apparent privity of contract between the Globe and the reinsurer. The attitude assumed by it in asking subrogation was analogous to that of an assignee of a cause of action. In that case, the Southern set up its defense, and the controversy thus brought to issue was tried on its merits. Plaintiff's prayer was granted, and decree entered in its favor against all the reinsurers. Such decree was affirmed on appeal, subject to some modification, which is not material to the present controversy. Sufficient for the purpose of this case to say that the final outcome of that suit was a judgment in favor of the Globe against the Southern for $14,240. This is the judgment which is now assailed in this proceeding by the Southern, as plaintiff.

The Southern alleges in its petition herein that, at the time of the beginning of Case No. 42572, the Southern had a good and valid independent cause of action against the American for $15,121; that the right of the Globe to recover in Case No. 42572 against the Southern, as a reinsurer, was subject to the right of the Southern to recover from the American, by way of counterclaim, the sum of $15,121; that the Southern refrained from interposing its counterclaim in that suit, as it had the alleged statutory right to do; that therefore (as a legal conclusion) the Globe took its judgment subject to the outstanding right of offset of the Southern; that, since the entry of such judgment, the Southern has reduced its cause of action against the American to an adjudication. The substance of its prayer is that its judgment for $15,121 against the American be applied as a payment and cancellation of the judgment held by the Globe against the Southern.

A hypothetical case may be stated briefly that will present every legal question to be considered herein. A, who is insolvent, holds a nonnegotiable note for $14,000 against B. B holds a nonnegotiable note for $15,000 against A. A assigns his note to C, for a full and honest consideration. C brings an action against B. B interposes various defenses in the action brought by C, but refrains from interposing his counterclaim as a defense. C prevails in the suit with B, and recovers a judgment for the full amount. Later, B recovers a judgment against A for $15,000. Thereupon, B brings a suit in equity against C, and sets up the subsequent judgment which he had obtained against A, and asks that it be offset against the cancellation of C's judgment against B. Will B's action against C lie? That is the question in the case at bar.

I. For the purpose of this discussion we assume the validity of the Southern's independent cause of action against the American, and that it existed at the time that the Globe brought its action for subrogation. Manifestly, the Southern could at that time have pleaded its cause of action against the American as a complete defense against recovery by the Globe; but it refrained from interposing such defense before judgment. Did the existence of this potential and unused defense affect as an infirmity the judgment obtained by the Globe? The argument of the Southern at this point is that, under the statute, it could

elect either to interpose its counterclaim or to withhold the same, without prejudice to a future action upon its counterclaim. This section has reference to the mutual rights of the parties to mutual causes of action. In this case *mutual* judgments are not involved. Equity will, in a proper case, offset mutual judgments, where equitable relief is necessary to accomplish such offset. Often such offset may be accomplished by a mere levy. Where this is not possible, relief in equity may be had. Nor is this a case where one of two mutual judgments has been assigned to a third party. In such a case, relief may be had in equity against such assignment, and for that purpose the judgment will be treated as a chose in action, and the assignment thereof may be sustained or set aside, precisely as though it covered any other personal property. In the case before us, the Southern is not seeking to offset its judgment against a mutual judgment held by its judgment debtor against it. The Globe is not a party to the judgment held by the Southern. The case presented, therefore, is not one of mutual offset of judgments. On the contrary, it is an effort to interpose, as against a judgment duly rendered after a hearing, a defense which could have been set up against the cause of action before the judgment thereon was rendered. Can an adjudication be thus assailed? We think it safe to say that the authorities are uniform to the contrary. When Case No. 42572 was brought, the Southern had its cause of action against the American. It had a twofold right in relation thereto: (1) As to the American, it had an independent cause of action, and at its election, had a right to set it up as a counterclaim or withhold it, and prosecute a later action thereon. (2) It had a further right, as against the Globe, as a quasi assignee, to interpose such counterclaim in that suit as a complete defense thereto. The question, therefore, is not whether it lost its cause of action against the American by failing to plead it as a counterclaim, but whether it lost its right of offset against the plaintiff by failing to plead such defense in that action. The adjudication obtained by the Globe was an adjudication that the Southern had no valid defense to the claim in its hands. That adjudication was in no sense impaired by the fact that a good defense could have been pleaded and proved in that action, but was not. True, the Southern retained its cause of action against the American, notwithstanding that it failed to set it up as a counterclaim.

But as against the Globe, it had no cause of action, and even no counterclaim. As against the Globe, it simply had a right of defense and a right to use its cause of action against the American as a defense against recovery by the Globe. It was, therefore, a clear case of failing to interpose a known defense. In view of the unanimity of authorities on this question, we need do no more than to quote a few excerpts therefrom.

In *Shricker v. Field,* 9 Iowa 366, we said:

"It should appear to be against good conscience to execute the judgment, and either that the injured party could not have availed himself of the facts set up in a court of law, or that he was prevented from doing so without fault or negligence on his part, by some fraud or accident. This is the general statement of the rule."

In *Ulber v. Dunn,* 143 Iowa 260, we said:

"If there was any fraud in procuring plaintiff's signature to the written contract, it was such fraud as might have been interposed by way of defense in the action brought before the justice of the peace in Kossuth County. Plaintiff, having failed to interpose in that suit a defense which was available to him, if he had any defense to the enforcement of the contract, cannot have relief in equity as against the enforcement of the judgment."

In *Wolcott v. Jones,* 86 Mass. (Allen) 367, it was said:

"There is no averment in the bill from which it appears that this remedy [set-off], if plaintiff had exercised due diligence, could not have been used by him to obtain a proper adjustment and set-off of the debt due to him against the claim on which the assignee has obtained judgment. This certainly afforded him, so far as we can infer from the statements in the bill, a clear, plain, and adequate remedy. Having omitted to avail himself of it, the plaintiff cannot now seek to enforce his set-off by enjoining the assignee against the collection of the amount due on the judgment * * *."

In *Sayre's Admr. v. Harpold,* 33 W. Va. 553 (11 S. E. 16), it was said:

"The rule, * * * as before shown, limits and restricts the relief in equity to cases in which the defendant has been prevented from using his set-off at law by fraud, accident, surprise, or some adventitious circumstance beyond his control. None of them, so far as I have been able to find, hold or even mention the insolvency of the judgment-creditor as a ground for relief in equity. And most of the cases are those in which the plaintiff in the judgment was insolvent."

In *Garvin v. Squires,* 9 Ark. (Eng.) 533 (50 Am. Dec. 224), it was said:

"These facts clearly showing, as they do, a plain election by the complainant below to defend himself at law upon the merits of his case, the law holds him to that election, and forever precludes him from a hearing of that case in equity, unless he can show that he was prevented from bringing his defense fairly before that court by fraud, or accident, or the act of the opposite party, unmixed with negligence on his part."

The rule is laid down in the textbooks as follows:

"Regardless of the insolvency or nonresidence of the judgment-creditor, one who has voluntarily refrained from using a set-off or counterclaim available to him in the original action cannot thereafter make such claim the basis of equitable relief against the judgment. Thus, where a defendant has voluntarily withdrawn a counterclaim or set-off, he cannot afterwards enjoin the enforcement of the judgment, even though the statute specifically permits the withdrawal of such a claim and a subsequent action upon it. One who might have, but failed to, interpose a set-off known to exist, or which by ordinary diligence could have been discovered, cannot enjoin the enforcement of the judgment on the ground that the set-off makes the judgment unconscionable." 3 Freeman on Judgments (5th Ed.) 2551.

"* * * a bill for this purpose cannot be sustained on the mere ground that the defendant has claims against the plaintiff which might be the subject of set-off, if there is no averment to show that the former for any reason could not have availed himself of his right of set-off in the action in which the judgment

against him was recovered.'' 1 Black on Judgments (2d Ed.) 618.

To the foregoing may be added a reference to our statute, Section 10952, Code, 1924, which provides:

''Judgment obtained in an action by ordinary proceedings shall not be annulled or modified by any order in an action by equitable proceedings, *except for a defense which has arisen or been discovered since the judgment was rendered.* But such judgment does not prevent the recovery of any claim, though such claim might have been used by way of counterclaim in the action on which the judgment was recovered.''

Responsive to the foregoing statute, the appellant urges that its present defense did arise after the judgment, in this: That, at the time of the pendency of Suit No. 42572, its claim against the American was unliquidated; that it could not reduce it to judgment, because the American was in the hands of a receiver, whom it could not sue; that, since the judgment in Case No. 42572, it has obtained in the receivership proceeding an allowance and adjudication of its claim, as heretofore stated; that, therefore, the offset which it now presents arose after the judgment in the first case.

It was enough that the appellant-plaintiff (the Southern) had its cause of action at the time Case No. 42572 was pending. It was not necessary that it be reduced to judgment before being pleaded as a counterclaim and offset. The subsequent adjudication added nothing to its availability as a cause of action in Case No. 42572. It must be held, therefore, that the offset now pleaded by the Southern did not arise after the judgment in favor of the Globe.

II. There is another feature of the record that operates against the appellant.

After trial and judgment in Case No. 42572, and after the modified affirmance of the judgment in this court and a remand to the district court for supplemental proceedings, the Southern filed its counterclaim in the case, and asked that the case be reopened, for the purpose of enabling it to establish its offset. The counterclaim was rejected in the district court, on the theory that it was filed too late, and, on motion of the Globe, it

was stricken from the files. That ruling was affirmed here on the second appeal. That ruling by the court amounted to an adjudication that the Southern had waived its right to offset its counterclaim in that suit, and that it was too late to plead it at that time. Moreover, if it was too late to plead the counterclaim at that time, that obstacle has not been removed by further lapse of time. If the waiver was effective against the Southern at that time, it can be no less effective now.

It is our conclusion, upon the whole case, that, by permitting the case to go to judgment without pleading its counterclaim as an offset to the claims of the Globe, the Southern did necessarily and irrevocably waive, not its counterclaim against the American, but its right to use such counterclaim as an offset and defense against the Globe.

This was the result reached by the district court, and its judgment is, accordingly,—*Affirmed*.

All the justices concur, except KINDIG, J., who is not participating.