On July 11, 1930, S.W. Creel agreed in writing to sell to defendant Stella Hammans an undivided half interest in two hundred acres of land in Union county for $5,500, to be paid on or before July 11, 1940. On May 10, 1937, S.W. Creel assigned his interest in the contract to plaintiff, J.C. Creel, Jr., who brought this suit in 1941 to foreclose the contract. Defendants contend that plaintiff's assignor did not own the half interest he contracted to sell. The question of title to the property is therefore important.
The two hundred acres were originally owned by John F. White, who died in 1917. His will, duly probated, named his wife, Emma, as sole beneficiary. There is a controversy, however, as to whether the will devised a fee or only a life estate to the widow. The widow subsequently married S.W. Creel. She died on April 12, 1929, leaving a will executed prior to her marriage to Creel. The surviving husband, S.W. Creel, instituted a will contest that was settled by a written contract dated May 8, 1929, between S.W. Creel and Stella Hammans in which they each took half of Emma's property. Emma's will was then admitted to probate.
Stella Hammans was brought up by John F. and Emma White but had never been adopted. The original will of Emma White (Creel) apparently bequeathed her property to the children of Stella Hammans, but the words "the children of" were obliterated and, as probated, the bequest was to Stella. This bequest was of "My farm in Jones Twp and also my home in Afton and any other Real Estate of which I may die in possession." The "farm in Jones Twp." is the land in suit. *Page 534 
Defendants contend that under the will of John F. White, his widow, Emma, acquired only a life estate; that since there was no devise of the remainder, the two hundred acres descended as intestate property to the collateral heirs of John F. White. Therefore, it is argued, S.W. Creel had nothing to sell Stella Hammans under the contract in suit; it is without consideration and impossible of performance.
[1] I. The material part of the will of White reads:
"* * * I will and bequeath all of my property of Evry discription both Real Estate and personal to my beloved Wife Emma White to controle and manage as she may see fit while she shall live, should she survivie me. I have full confidence in her ability to manage our Business interests and to do Justice by all concerned and I hereby nominate and appoint her as Executor of this my last will or give her power to appoint one if any should be needed."
We are agreed that this will provides for a life estate and not a fee. Of course, the important consideration in the construction of a will is the intent of the testator. In re Estate of Edwards,231 Iowa 71, 77, 300 N.W. 673, 676. The effect of our holding is that the fee was left undisposed of by will and passed to White's heirs at law. Ransom v. Mellor, 230 Iowa 451, 455, 297 N.W. 861, 863, and citations. Where it can fairly be done, a construction will be avoided that results in intestacy. Horak v. Stanley,216 Iowa 318, 249 N.W. 166, and citations. However, failure of the will to dispose of the remainder is not controlling. Anderson v. Gifft, 229 Iowa 515, 522, 294 N.W. 721, and citations. It is also true that in case of doubt the law favors a fee rather than a lesser estate. Putbrees v. James, 162 Iowa 618, 625, 144 N.W. 607. Nevertheless, the provision that the wife have the control and management of testator's property while she shall live can mean only that a life estate was intended. Anderson v. Gifft, supra; Horak v. Stanley, supra; Jones v. Clyman, 193 Iowa 1248, 1255, 188 N.W. 954; Ironside v. Ironside, 150 Iowa 628, 130 N.W. 414; Criley v. Cassel, 144 Iowa 685, 123 N.W. 348; Podaril v. Clark, 118 Iowa 264, 91 N.W. 1091.
[2] II. But the trial court held, and we think correctly, that the rights of the heirs of White were barred by the statute of *Page 535 
limitations, section 11007 (6), Code, 1939. Where for the statutory period one holds hostile, actual, open, exclusive, and continuous possession, under claim of right or title, he becomes the owner. Arnd v. Harrington, 227 Iowa 43, 48, 287 N.W. 292 2 C.J.S. 520, section 8; 1 Am. Jur. 793, section 3.
Defendants contend the doctrine of adverse possession is not applicable here because, it is said, both S.W. Creel and Stella Hammans knew they had no title to the land and therefore could not in good faith make any claim thereto. It is true we have held that a claimant must in good faith believe he has some claim of right or title to the premises in order to acquire title by adverse possession. McFerrin v. Wiltse, 210 Iowa 627, 630, 231 N.W. 438; Goulding v. Shonquist, 159 Iowa 647, 141 N.W. 24; Litchfield v. Sewell, 97 Iowa 247, 66 N.W. 104. The Litchfield case holds that a quitclaim deed from one known to be a mere "squatter" is insufficient basis for a claim of right.
But the doctrine for which defendants contend is not applicable here. One is not deprived of the benefit of the statute of limitations merely because his claim of right is unenforceable or his title is known to be defective. The doctrine of adverse possession presupposes a defective title. It is not based on, but is hostile to, the true title. Severson v. Gremm, 124 Iowa 729, 733, 100 N.W. 862; Ratigan v. Ratigan, 181 Iowa 860, 870, 162 N.W. 580, 165 N.W. 85; 2 C.J.S. 520, section 8; 1 Am. Jur. 793, section 3. If the statute were to run only in favor of a valid title it would serve no purpose. The holder of such a title has no need to invoke the statute. Hughes v. Wyatt, 146 Iowa 392, 396, 125 N.W. 334, and citations. Where bad faith is held to negative an alleged claim of right, it is only another way of saying that such claim has been disproved. Id.
To avoid the claim of adverse possession, defendants rely upon testimony of the attorney for Stella Hammans that he told her and S.W. Creel at the time he prepared the contract in suit that, in his judgment, neither she nor Creel had any title to the land because Emma White Creel acquired only a life estate under the will of John F. White and could pass no interest to them. Following this the contract was signed and acted upon for ten years. Reliance is also placed upon testimony of Stella *Page 536 
that she never claimed adversely to the heirs of John F. White. Notwithstanding this testimony, we think the claim of adverse possession is clearly proved.
On July 29, 1940, plaintiff brought a previous action, similar to the one now before us, to foreclose the contract in suit. Several pleadings were filed by defendants in that suit. On September 22, 1941, plaintiff dismissed his petition without prejudice. On the following day, however, that case was tried on the issues raised by the counterclaim of Stella Hammans to recover from plaintiff $1,650 interest paid by her on the contract and plaintiff's reply thereto. There was a decree for appellee from which Stella appealed to this court. The appeal was dismissed because only a finding of fact, and not the decree proper, was assailed. Creel v. Hammans, 232 Iowa 95,5 N.W.2d 169. In her answer in that suit, sworn to by her, Stella stated:
"That at the time of the execution of the contract [in suit] * * * S.W. Creel, and this defendant * * * believed that they each had an undivided one-half interest in said property under the will of Emma White Creel and the stipulation of settlement made in her estate. * * *
"That at the time of the execution of the contract * * * and ever since, plaintiff and plaintiff's assignor claimed the title to the property described in said contract under the will and stipulation of settlement in the estate of Emma White Creel, deceased."
Stella testified upon the former trial in answer to questions by her own attorney:
"Q. At the time you made that settlement with Willard Creel in 1929, did you believe that the farm which she [Mrs. Creel] referred to in her will as her farm in Jones Township was her property? A. I did. Q. And as far as you know, Mr. Creel believed it belonged to her too? A. I think so. Q. When did you find out, Mrs. Hammans, that there was some question as to whether Emma White owned this farm? A. Well, after J.C. Creel started suit last year [1940]. Q. And after we informed you that the will of John F. White only gave Emma White a life estate? A. Yes." *Page 537 
On cross-examination in the former case, Stella said that since the death of Mrs. Creel in 1929 she had claimed the farm as heir of Mrs. Creel, until after that suit was brought. In the present suit, Stella testified that she claimed to own half the land under the will of Mrs. Creel and the first contract with Creel and the other half under the contract in suit.
On May 25, 1929, S.W. Creel and Stella were appointed executors of the estate of Emma White Creel. Each had an attorney. The land involved here was listed by them in the inventory as Emma's property. They paid an inheritance tax of $517 to the state on the theory that Stella acquired a half interest in the real estate under Emma's will and the agreement of May 8, 1929, between S.W. Creel and Stella. The record indicates that Stella received half the rent on the land for 1929. When the contract in suit was made on July 11, 1930, she took possession of the entire farm as of that date. Creel's interest in the lease for the term commencing March 1, 1930, was assigned to Stella. Continuously since then she rented the farm, collected the rents, paid taxes, and exercised full rights of ownership until after the prior suit was started against her in 1940.
On July 6, 1940, the attorney who acted in the former suit for Stella, her husband, and daughter, Doris, prepared and there was executed a quitclaim deed of the farm from Stella and husband to Doris. The deed was recorded by the attorney. It was without consideration. Doris is subnormal mentally, concededly incompetent to do any business, and does not know what this case is about. Upon this trial, Doris' attorney announced that she repudiates the deed from her mother and father and claims nothing under it.
So far as appears, none of the heirs of John F. White (they are all collateral heirs) has ever made any claim to this land. Stella Hammans or her attorneys talked to most of them. None of them made any claim to her of any interest in the property. In 1942, after this suit was brought, Stella or her attorneys secured quitclaim deeds to the incompetent daughter, Doris, for a nominal consideration, from numerous collateral heirs of White to what is claimed to be five-sixths undivided interest in the land. On the strength of these deeds, Doris asks that her title be quieted. *Page 538 
It is unnecessary to determine whether Emma White Creel's possession was adverse from the time of the death of White, in order to start the running of the statute in 1917. In any event, the statute commenced to run against the White heirs not later than May 1929, following Emma's death, the probating of her will, the contract dividing the estate between S.W. Creel and Stella Hammans, and their taking possession under the will and contract.
Stella Hammans' possession of the entire farm as of March 1, 1930, was under the contract in suit and was not hostile to S.W. Creel but inured to his benefit. Creel, the vendor, and Stella, the purchaser, stood in the same relation in that regard as Stella, the landlord, and her tenant, at least until the previous foreclosure suit was brought and Stella first asserted any right hostile to her vendor. 1 Am. Jur. 814, section 40; 2 C.J.S. 552-554, section 39; Laraway v. Zenor, 100 Iowa 181, 186, 69 N.W. 416. It follows that Doris Hammans acquired no substantial interest under the deeds from the White heirs because the statute had then run against them and she is not entitled to have her title quieted. 2 C.J.S. 806, section 204; 1 Am. Jur. 796, section 11.
III. A title by adverse possession is a legal title in fee simple, but where, as here, it must be proven by extrinsic evidence it is not a record title. 1 Am. Jur. 797, 798, 799, sections 13, 14; Stevenson v. Polk, 71 Iowa 278, 287, 32 N.W. 340. The contract in suit provides that if the purchaser pays the full purchase price with interest, together with all taxes, the vendor will furnish a warranty deed and abstract of title. The purchaser is now in default in the payment of purchase price, interest, and taxes. It may be conceded that the contract requires a record title and is not satisfied by furnishing extrinsic evidence of title by adverse possession. See Hardin v. Union Mut. L. Ins. Co., 222 Iowa 1283, 1288, 271 N.W. 176; Upton v. Smith, 183 Iowa 588, 590, 166 N.W. 268; Fagan v. Hook,134 Iowa 381, 386, 105 N.W. 155, 111 N.W. 981, and citations; annotations 57 A.L.R. 1253, 1335; 52 A.L.R. 1460, 1487; 7 A.L.R. 1166, 1175; 1 C.J.S. 380, section 1; 1 Am. Jur. 155, 156, section 1. *Page 539 
But this defect in the title of plaintiff's assignor is clearly not available here by way of defense. As stated, Stella took and has retained possession under her contract. She has had the rents for more than ten years. This case was tried in December 1942, nearly two and one-half years after Stella discovered the condition of her vendor's title. She has never restored possession nor accounted for the benefits received by her under the contract. Nor has she shown her ability to do so. On the contrary, she executed a conveyance to her daughter, thereby putting it beyond her power, if the deed was valid, to restore the status quo. See Stevenson v. Polk, supra, 71 Iowa 278, 295, 32 N.W. 340.
[3] It is well settled that a purchaser who takes and retains possession under the contract cannot refuse to pay the purchase price because of alleged lack of title in the vendor unless he rescinds and restores possession. Where a purchaser who learns of defects in his vendor's title does not rescind he can retain possession under the contract only upon condition that he pays the purchase price. If he does not elect to rescind, it is considered that he is willing to receive such title as the vendor is able to give, content with the personal responsibility of the vendor upon his covenants in case the title fails and he is dispossessed. Van Duzer v. Engeldinger, 209 Iowa 150, 153, 227 N.W. 591; Vanderwilt v. Broerman, 201 Iowa 1107, 1114, 206 N.W. 959; Richardson v. Short, 201 Iowa 561, 567, 207 N.W. 610; McNair v. Sockriter, 199 Iowa 1176, 1186, 201 N.W. 102; Campbell v. Hagerty, 191 Iowa 1265, 184 N.W. 328; Hounchin v. Salyards,155 Iowa 608, 615, 133 N.W. 48, 136 N.W. 1049; annotation 57 A.L.R. 1253, 1550. Appellee's pleadings, as well as the evidence, are sufficient to bring the case within the above rule. See Dierksen v. Pahl, 194 Iowa 713, 190 N.W. 423.
Our conclusion makes it unnecessary to decide whether the court's denial in the previous suit of Stella's claim to recover interest paid by her constitutes an adjudication that entitled plaintiff to the foreclosure of the contract in this suit.
IV. On July 11, 1930, the date of the contract in suit, Stella Hammans deeded to S.W. Creel her half interest in the Afton property that came to her under the will of Emma White Creel and the earlier contract of May 8, 1929, taking back a purchase-money note and mortgage for $900, due July 11, 1940. *Page 540 
Plaintiff sought to have credited to Stella on the contract in suit the amount owing by S.W. Creel on the Afton mortgage and asked that the note and mortgage be canceled. The trial court granted this relief. On July 3, 1940, shortly before plaintiff brought the prior suit, Stella assigned the mortgage to her mother-in-law, Mrs. J.W. Hammans, in payment of three notes held by her totaling $713, signed by Stella's husband. Mrs. J.W. Hammans complains of the cancellation of this note and mortgage.
The court's ruling would, of course, be proper if Stella had remained the owner of the note and mortgage. It would then be a simple case of set-off of mutual demands. It is equally clear, under both our statutes and decisions, that the ruling is correct unless Mrs. J.W. Hammans holds the $900 note as a good-faith purchaser for value of a negotiable instrument. The note is not before us and the record does not show whether the note is negotiable paper. There is no presumption that a note accompanying a mortgage is a negotiable instrument. Benton v. Morningside College, 202 Iowa 15, 23, 209 N.W. 516.
But even if this note is negotiable, it does not appear that Mrs. J.W. Hammans is entitled to protection as a good-faith purchaser. At best, there is considerable doubt that the note was endorsed or delivered to her. Aside from this, the fair inference is that she had knowledge or notice of the right of set-off held by plaintiff or his assignor against Stella. As the holder of the mortgage, Mrs. J.W. Hammans was merely the assignee thereof.
[4] The maker of a note and mortgage can set up as against a transferee, who is not a good-faith holder of negotiable paper, any claim he had against the transferor when he first learned of the assignment. This includes not only defenses but rights of set-off existing in favor of the maker as against the assignor. The right exists even though the assignment is for a valuable consideration. It follows that plaintiff had the right to set off part of Stella's indebtedness under the contract in suit against the note and mortgage. Sections 9451, 10971, Code, 1939; Benton v. Morningside College, supra, 202 Iowa 15, 24, 209 N.W. 516, and citations; De Laval Separator Co. v. Sharpless, 134 Iowa 28, *Page 541 
111 N.W. 438, and citations; 47 Am. Jur. 754, section 61. See, also, Soldier Valley Sav. Bk. v. Camanche S. G. Co.,219 Iowa 614, 258 N.W. 879; Southern Sur. Co. v. Globe Nat. F. Ins. Co., 210 Iowa 359, 228 N.W. 56; Hecker v. Boylan, 126 Iowa 162, 101 N.W. 755; 6 C.J.S. 1164, section 114; id., 1184, section 132; 12 Iowa L. Rev. 200, 201.
V. Some other matters argued and considered need not be discussed.
The decree is silent as to the furnishing of a deed and abstract. We think it should provide that in the event the judgment is paid into the office of the clerk of the lower court, plaintiff will be required, before withdrawing the money, to deliver a warranty deed from S.W. Creel, subject, however, to any transfers, liens, or encumbrances defendants may have placed or permitted against the premises, together with an abstract of title certified to date. See Carns v. Sexsmith, 193 Iowa 1080, 188 N.W. 657; Vanderwilt v. Broerman, supra, 201 Iowa 1107, 1115, 206 N.W. 959. As thus modified, the decree is affirmed. — Modified and affirmed.
All JUSTICES concur.